[No. 42383.    En Banc.    September 21, 1972.]

MYRNA AMBURN *et al., Respondents and Cross-appellants,* v. MAXINE E. DALY, *Appellant.*

*Slade Gorton, Attorney General,* and *Joseph M. Little-more, Assistant,* for appellant.

*Stephen M. Randels* and *John Gant,* for respondents and cross-appellants.

HUNTER, J.—This is an appeal from a judgment of the King County Superior Court, entered April 18, 1972, re-

versing a decision of the Employment Security Department of the State of Washington which had denied unemployment compensation benefits to nine petitioners who were included among some 3,000 claimants similarly denied benefits.

The record shows that each of the petitioners (respondents and cross-appellants) filed applications prior to April 5, 1970, with the Employment Security Department for unemployment compensation benefits. Each applicant thereafter received an initial determination of entitlement to benefits computed on reportable wages earned during the "base year" which was defined at that time under RCW 50.04.020, as "the last calendar year preceding the first day of the benefit year." "Benefit year" was formerly defined under RCW 50.04.030, as "the period beginning with the first full calendar week in July and ending the following calendar year with the last calendar week beginning in June." At the time the petitioners filed their initial applications for benefits, their base year in each case was the calendar year of 1968, and their benefit year was the period beginning with the first full calendar week in July 1969, and ending July 4, 1970. The petitioners received weekly benefit payments in accordance therewith through April 4, 1970, when their benefits were terminated.

By Laws of 1970, 1st Ex. Sess., ch. 2, the Washington state legislature amended the Employment Security Act, RCW Title 50. These amendments changed eligibility and entitlement criteria and increased the amount of payable benefits. As a result, "base year" and "benefit year" were redefined in RCW 50.04.020 and RCW 50.04.030 as follows:

> "Base year" with respect to each individual, shall mean the first four of the last five completed calendar quarters immediately preceding the first day of the individual's benefit year.

RCW 50.04.020.

> "Benefit year" with respect to each individual, means the fifty-two consecutive week period beginning with the first day of the calendar week with respect to which the

individual files an application for an initial determination and thereafter the fifty-two consecutive week period beginning with the first day of the calendar week with respect to which the individual next files an application for an initial determination after the termination of his last preceding benefit year: *Provided, however,* That an individual's benefit year is not established unless the determination shows the applicant to have met the wage and employment conditions fixed by law as the minimum for the receipt of benefits: *Provided, further,* That an individual's benefit year shall be extended to be fifty-three weeks when at the expiration of fifty-two weeks the establishment of a new benefit year would result in the use of·a quarter of wages in the new base year that had been included in the individual's prior base year.

RCW' 50.04.030. When the legislation was initially introduced for consideration by the legislature, the amendments provided for an effective date of July 6, 1970, which date would have coincided with the end of the benefit year applicable under the previously existing law; however, the effective date was moved up to April 5, 1970, prior to enactment by the legislature.

The defendant (appellant and cross-respondent), Maxine Daly, Commissioner of the Employment Security Department (hereafter referred to as Commissioner), interpreted the 1970 amendments to the act as terminating all entitlements to benefits which existed under the act prior to April 5, 1970, and all claimants who were receiving benefits prior to April 5, 1970, were required to reapply for benefits under the amended act if they wished to continue to receive benefits. The notice sent out by the department to this effect, read as follows:

STATE OF WASHINGTON—EMPLOYMENT SECURITY
DEPARTMENT
IMPORTANT NOTICE

· The Washington Unemployment Compensation Law has been amended to be effective April 5, 1970. Such amendments result in. the automatic expiration of the current benefit year on April 4, 1970, rather than on July 4, 1970. If you are unemployed and wish to claim benefits after April 4, 1970, it will be necessary for you to file a

new application to requalify. Under the new Law you may establish a valid claim if you worked in Washington during the 1969 calendar year and earned at least $1,050.

Of the claimants who were eligible for and were receiving benefits during the weeks prior to April 5, 1970, there were approximately 3,000 claimants, including the petitioners, who were ineligible for benefits after April 5, 1970, by reason of the Commissioner's interpretation of the 1970 amendments.

Each of the nine petitioners received an appealable determination of denial of benefits effective April 5, 1970; each appealed and received a hearing followed by an appeals decision denying benefits; each petitioned the Commissioner for a review of that decision; and each was issued a Commissioner's decision pursuant to RCW 34.04.130, denying benefits. The matters were consolidated for hearing, submitted on agreed facts and heard in the Superior Court for King County, on July 23, 1971.

The trial court entered a judgment on April 8, 1972, reversing the decision of the Commissioner and holding that the defendant Commissioner improperly applied Laws of 1970, 1st Ex. Sess., ch. 2, to the claims of the petitioners and, in doing so, exceeded her authority. The court ordered the Employment Security Department to pay the petitioners the benefits to which they were entitled from April 5, 1970, through July 6, 1970. The petitioners' motion, pursuant to CR 52(b), for an order adjudging the action to be a class action and applicable to all 3,000 affected claimants, was denied. The Commissioner now appeals the decision of the trial court, and the petitioners cross-appeal the denial of their motion for a class action which limited the relief granted to the named petitioners.

The main issue presented in this appeal is whether the Commissioner properly construed and applied Laws of 1970, 1st Ex. Sess., ch. 2, in determining the rights of the petitioners to unemployment benefits on and after April 5, 1970. The Commissioner contends that she applied the law as amended in 1970 in direct compliance with the terms of

the act. She argues that the rights, privileges, and immunities conferred by the employment security laws are not vested and are subject to the power of the legislature to amend or repeal all or any part of the title; that the 1970 amendments created a radically altered system of unemployment compensation which was intended to supplant the former program as of April 5, 1970, by repealing the statutes formerly defining base and benefit year, the computation of benefits criteria and the former eligibility criteria; and that since there was no savings clause in the 1970 amendments, the new definitions were applicable in determining the unemployment benefits of the petitioners as of April 5, 1970.

We do not agree with the Commissioner that the 1970 amendments may be applied in such a manner so as to extinguish, on April 5, 1970, the outstanding claims of the persons receiving unemployment compensation benefits prior to that date. Our resolution of the issues in the instant case is premised upon certain basic rules of statutory construction.

██ The underlying purpose inherent in the function of judicial interpretation of statutory enactments is to effectuate the objective or intent of the legislature. *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 486 P.2d 1080 (1971); *State v. Zornes*, 78 Wn.2d 9, 475 P.2d 109 (1970); *State ex rel. Tarver v. Smith*, 78 Wn.2d 152, 470 P.2d 172 (1970), *cert. denied*, 402 U.S. 1000, 29 L. Ed. 2d 166, 91 S. Ct. 2175 (1971); *Krystad v. Lau*, 65 Wn.2d 827, 400 P.2d 72 (1965).

In construing revised statutes and connected acts of amendment and repeal, it is necessary to observe great caution to avoid giving an effect to these acts which was not contemplated by the legislature. *See State ex rel. Duvall v. City Council*, 71 Wn.2d 462, 429 P.2d 235 (1967).

The courts, in pursuance of the general object of giving effect to the intention of the legislature, are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, and no construction should be given to a statute

which leads to gross injustice or absurdity. *Wilson v. Lund,* 74 Wn.2d 945, 447 P.2d 718 (1968); *In re Horse Heaven Irr. Dist.,* 11 Wn.2d 218, 118 P.2d 972 (1941).

Legislative intent, will, or purpose, is to be ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the act. *Guinness v. State,* 40 Wn.2d 677, 246 P.2d 433 (1952); *Cory v. Nethery,* 19 Wn.2d 326, 142 P.2d 488 (1943); *In re Horse Heaven Irr. Dist., supra.*

In placing a judicial construction upon a legislative enactment, the entire sequence of all statutes relating to the same subject matter should be considered. *Connick v. Chehalis,* 53 Wn.2d 288, 333 P.2d 647 (1958); *State ex rel. Washington Mut. Sav. Bank v. Bellingham,* 183 Wash. 415, 48 P.2d 609 (1935).

An original act and an amendment to it should be read and construed as one law passed at the same time. *Bradley v. Department of Labor & Indus.,* 52 Wn.2d 780, 329 P.2d 196 (1958); *McClure v. United States,* 95 F.2d 744 (9th Cir. 1938), aff'd, 305 U.S. 472, 83 L. Ed. 296, 59 S. Ct. 335 (1939).

A legislative enactment is presumed to apply prospectively only, and will not be held to apply retrospectively unless such legislative intent is clearly expressed or to be implied. *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972); *Anderson v. Seattle,* 78 Wn.2d 201, 471 P.2d 87 (1970); *Bodine v. Department of Labor & Indus.,* 29 Wn.2d 879, 190 P.2d 89 (1948); *Lynch v. Department of Labor & Indus.,* 19 Wn.2d 802, 145 P.2d 265 (1944), and cases cited therein.

■ Applying these principles of statutory construction to the 1970 amendments in this case, it is incumbent upon us to read Laws of 1970, 1st Ex. Sess., ch. 2, in context with the entire Employment Security Act in order to ascertain and give effect to their purpose and to construe them in a manner consistent with the general purposes of the act. The general purpose of the employment security laws is set forth in the preamble to the Employment Security Act, under RCW 50.01.010, which reads as follows:

Whereas, economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state; involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. Social security requires protection against this greatest hazard of our economic life. This can be provided only by application of the insurance principle of sharing the risks, and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing powers and limiting the serious social consequences of relief assistance. The state of Washington, therefore, exercising herein its police and sovereign power endeavors by this title to remedy any widespread unemployment situation which may occur and to set up safeguards to prevent its recurrence in the years to come. The legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, and that this title shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum.

It is clear from a reading of the foregoing preamble that the express intent of the legislature when it enacted the Employment Security Act was to reduce economic insecurity due to unemployment and to prevent its spread and lighten its burden. Further, there can be no question but that this act must be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum.

We have more than once considered the purpose and policy of the Employment Security Act, which purpose and policy have never been amended. *Cowiche Growers, Inc. v. Bates,* 10 Wn.2d 585, 117 P.2d 624 (1941), involved, as in this case, an amendment to the Employment Security Act, which changed certain definitions. Prior to 1941, the term "agri-

cultural labor" meant "services customarily performed by a farm hand on a farm for the owner or tenant of a farm." In 1941, the definition was amended so that fruit pickers who worked in packing houses were included in the definition of "agricultural labor." This meant that those who were previously covered under the former definition would, in the future, be excluded from unemployment benefits under RCW 50.04.150. At issue was the applicability of the new (1941) definition so as to prevent the payment of benefits accruing under the old law. In *Cowiche Growers, Inc. v. Bates, supra,* we stated at page 593:

> the purpose of this act is the reduction of involuntary unemployment, and . . . the act is to be liberally construed to effectuate that purpose . . .

And we stated at page 605:

> In view of the conclusion reached by us relative to the meaning of "agricultural labor" in the 1939 act, we do not believe it was the intent of the legislature, by the 1941 act, to deprive those who would come within the provisions of the 1937 and 1939 acts of benefits created by virtue of those acts.

The *Cowiche* case was later reviewed in the case of *In re Yakima Fruit Growers Ass'n,* 20 Wn.2d 202, 146 P.2d 800 (1944). Therein, we extensively analyzed *Cowiche* and again adhered to the principles established in that case.

We believe that the same rationale applies in the instant case as in the *Cowiche* case. Laws of 1970, 1st Ex. Sess., ch. 2, did not amend or repeal in any manner the purpose and policy of the Employment Security Act as set forth in the preamble, and as held by this court; therefore, that purpose and intent is a part of the framework of which the 1970 amendments became a part.

Having in mind this purpose and after a careful reading of Laws of 1970, 1st Ex. Sess., ch. 2, we are convinced that it was not the intent of the 1970 Legislature to exclude approximately 3,000 persons receiving benefits under the act at the time the new amendments took effect, but rather that the available benefits would be expanded under the new criteria. A comparison of the old and new provisions

makes it clear that a vast improvement was intended. The maximum weekly benefit amount was increased from $42 to $75. There is also an increase in benefits potentially payable to the claimant. RCW 50.20.120. In addition to the above, provision for the extension of benefits was made for claimants who had exhausted those normally available. RCW 50.20.127. It would be an inconsistency to say that the legislature intended to increase the benefits under the act and by such actions to also take away existing benefits of those who could not qualify for the increased benefits.

An examination of the history available in the record and elsewhere makes it readily apparent that the new amendments were passed during a period of time in the state of Washington wherein thousands of workers were being laid off from work and reform and improvement of the state's unemployment compensation program was of high priority. Thousands of people were receiving unemployment compensation from existing determinations under the previous law. We find no indication in the 1970 amendments that any of these persons were to have their unexhausted benefits discontinued or reduced in amount.

In view of the foregoing, the construction placed upon the amendments by the Commissioner, which applied the new amendments so as to terminate the existing benefits of approximately 3,000 persons, was manifestly an erroneous interpretation. Further, the interpretation that the new amendments applied to all claimants amounts to a retroactive application. As stated before, the presumption is against such an application where no such legislative intent is clearly expressed or to be implied. This being the case, the absence of a savings clause in the new legislation is not relevant here.

We hold, therefore, that the Commissioner improperly construed and applied Laws of 1970, 1st Ex. Sess., ch. 2, in determining the rights of the petitioners to unemployment benefits on and after April 5, 1970, by terminating their rights to benefits for which they were able to qualify under the prior act.

The petitioners contend in their cross-appeal that the trial court erred in denying class relief to those approximately 3,000 claimants, other than the petitioners, who were similarly terminated from receipt of benefits by the Commissioner's action.

■ We need not reach this contention as the Commissioner is authorized to afford relief in cases such as this where there has been a judicial determination applicable to a denial of benefits under RCW 50.20.160(4), which reads:

> A redetermination may be made at any time to conform to a final court decision applicable to either an initial determination or a determination of denial or allowance of benefits. Written notice of any such redetermination shall be promptly given by mail or delivered to such interested parties as were notified of the initial determination or determination of denial or allowance of benefits and any new interested party or parties who, pursuant to such regulation as the commissioner may prescribe, would be an interested party.

We find that the approximately 3,000 claimants, other than the petitioners, who were denied benefits based similarly on the Commissioner's incorrect interpretation of the 1970 amendments, are "interested parties" within the meaning of the term in RCW 50.20.160(4), and may be afforded relief thereby.

It was concluded by the trial court, however, that no relief could be afforded these claimants as they did not preserve their claims. This conclusion is irrelevant to the authority of the Commissioner to grant relief under RCW 50.20.160(4). There is no such condition in the statute limiting the exercise of the Commissioner's authority.

The judgment limiting relief to the named petitioners is modified insofar as it is inconsistent with the authority of the Commissioner to grant relief to all claimants under RCW 50.20.160(4).

The judgment of the trial court is affirmed as modified.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.