[No. 42603.   En Banc.   October 4, 1973.]

BREWSTER PUBLIC SCHOOLS et al., *Respondents*, v. PUBLIC UTILITY DISTRICT NO. 1 OF DOUGLAS COUNTY, *Appellant.*

*Hughes, Jeffers & Jeffers,* by *Richard G. Jeffers* and *James Danielson,* for appellant.

*Lee, Krilich, Lowry & Thompson,* by *Donald H. Thompson* and *H. Frank Crawford,* for respondents.

HUNTER, J.—The defendant (appellant), Public Utility District No. 1 of Douglas County, appeals from a judgment of the trial court holding that the land acquired by the defendant, lying within the Brewster School District, constitutes an operating property as that term is used in RCW 54.28.080, and that the defendant was thus liable to pay the required proportion of bonded indebtedness of the plaintiff (respondent), Brewster School District, pursuant to the above mentioned statute.

This case was submitted to the trial court on stipulated facts which may be summarized as follows. The defendant acquired certain property in connection with the construction, installation and maintenance of the Wells Hydroelectric Project on the Columbia River. A portion of this property was acquired for the location and maintenance of a reservoir upstream from the Wells Dam. This property was, at the time of acquisition, utilized for a variety of purposes by the individual owners. The primary use was agricultural and in no case was the property acquired by the defendant being used by the private owner for the purpose of operating a plant or system for the generation, transmission or distribution of electric energy for sale.

After extensive clearing and other construction, the property in question was flooded for reservoir purposes. The flooding took place over several years after acquisition of the property in question. Since the flooding, the resulting reservoir has been used for the purpose of operating a plant or system for the generation, transmission and distribution of electric energy for sale. Without the reservoir, the production of electric energy could not be accomplished.

The controversy in this case centers around whether the property acquired by the defendant constitutes "operating property" as used in RCW 54.28.080. The trial court, after a review of the history of RCW 54.28, concluded that the property in question falls within the ambit of RCW 54.28.080.

The defendant contends that the trial court erred in holding that the property in question is "operating property" as used in RCW 54.28.080. We agree.

An analysis of this contention requires consideration of the following statutes:

RCW 54.28.010, which provides in part:

"Operating property" means all of the property utilized by a public utility district in the operation of a plant or system for the generation, transmission, or distribution of electric energy for sale;

RCW 54.28.080, which provides:

Whenever any district *acquires an operating property from any private person, firm, or corporation* and a portion of the operating property is situated within the boundaries of any school district and at the time of such acquisition there is an outstanding bonded indebtedness of the school district, then the public utility district shall, in addition to the tax imposed by this chapter, pay directly to the school district a proportion of all subsequent payments by the school district of principal and interest on said bonded indebtedness, said additional payments to be computed and paid as follows: The amount of principal and interest required to be paid by the school district shall be multiplied by the percentage which the assessed value of the property acquired bore to the assessed value of the total property in the school district at the time of such acquisition. Such additional amounts shall be paid by the public utility district to the school district not less than fifteen days prior to the date that such principal and interest payments are required to be paid by the school district. In addition, any public utility district which acquires from any private person, firm, or corporation an operating property situated within a school district, is authorized to make voluntary

payments to such school district for the use and benefit of the school district.

(Italics ours.)

Under the definition provided in RCW 54.28.010, there is an inconsistency with RCW 54.28.080, as under the definition the only time RCW 54.28.080 would be applicable would be when a public utility district acquired property "utilized by a public utility district in the operation of a plant or system for the generation, transmission, or distribution of electric energy for sale" from a private person. There is a further inconsistency in the above statutes in that there would be no need for RCW 54.28.080 if it pertained only to one public utility district purchasing an operating property from another. The fourteenth amendment to the Washington State Constitution exempts municipal corporations from taxation. Public utility districts are municipal corporations. RCW 54.12.010. Thus, if one public utility district were merely purchasing an operating property from another, this would not affect the school district levies and there would be no need for RCW 54.28.080. We do note that conceivably there is a situation that the above statute could have been designed to cover. That is where a public utility district acquires private property it has been using to generate, distribute or transmit electrical energy for sale. However, this strict interpretation would in effect read RCW 54.28.080 into nonexistence.

The question becomes then—exactly what did the legislature mean when it used the term "operating property" in RCW 54.28.080?

In the recent case of *Amburn v. Daly*, 81 Wn.2d 241, 501 P.2d 178 (1972), we stated on pages 245-46:

> The underlying purpose inherent in the function of judicial interpretation of statutory enactments is to effectuate the objective or intent of the legislature. . . .
> In construing revised statutes and connected acts of amendment and repeal, it is necessary to observe great caution to avoid giving an effect to these acts which was not contemplated by the legislature.

The courts, in pursuance of the general object of giving effect to the intention of the legislature, are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, and no construction should be given to a statute which leads to gross injustice or absurdity. . . .

Legislative intent, will, or purpose, is to be ascertained from the statutory text as a whole, interpreted in terms of the general object and purpose of the act. . . .

In placing a judicial construction upon a legislative enactment, the entire sequence of all statutes relating to the same subject matter should be considered. . . .

An original act and an amendment to it should be read and construed as one law passed at the same time.

(Citations omitted.)

In *Krystad v. Lau*, 65 Wn.2d 827, 844, 400 P.2d 72 (1965), we stated:

[W]here doubt or uncertainty arises from the words used, the section under construction should be read in context with the entire act.

(Citations omitted.)

Applying these rules of statutory construction to the statutes in question, we note that operating property was originally defined in Laws of 1941, ch. 245, § 1, p. 809. In that act, the words "operating property" were used on at least two occasions with reference to a complete functional facility. Section 2(a) of the act imposes a tax upon the act or privilege of engaging within the state in the operation of works, plants or facilities for the distribution and sale of electric energy. Section 2(b)(2) speaks in terms of the reproduction cost new and less depreciation of such operating property. Section 3a of the act speaks of constructing and maintaining operating properties upon the streets, alleys, and public places within a city or town.

The same basic references were maintained in Laws of 1947, ch. 259, p. 1079. Then in 1949, both the 1941 and 1947 acts were amended. Laws of 1949, ch. 227, § 1(g), p. 803, is the present RCW 54.28.080. In Laws of 1957, ch. 278, p.

1105, the above laws were amended and codified. RCW 54.28.080 was enacted without amendment. Section 13 of that act, now RCW 54.28.110, provides:

> Whenever, hereafter, *property is removed from the tax rolls as a result of the acquisition of operating property or the construction of a generating plant by a public utility district, such public utility district may make voluntary payments* to any municipal corporation or other entity authorized to levy and collect taxes in an amount not to exceed the amount of tax revenues being received by such municipal corporation or other entity at the time of said acquisition or said construction and which are lost by such municipal corporation or other entity as *a result of the acquisition of operating property or the construction of a generating plant by the public utility district*: *Provided,* That this section shall not apply to taxing districts as defined in RCW 54.28.010, and: *Provided further,* That in the event *any operating property so removed from the tax rolls is dismantled or partially dismantled the payment which may be paid hereunder shall be correspondingly reduced.*

(Italics ours.)

The same inconsistency exists here. There would be no need for tax relief where a public utility district acquired operating property, for by definition an operating property is one utilized by a public utility district for the generation, transmission, or distribution of electrical energy for sale. However, the legislature has provided a much stronger indication of its intent by distinguishing, in RCW 54.28.110, between the acquisition of operating property and the construction of a generating plant. The use of the words dismantled or partially dismantled with reference to operating property is a further indication that the legislature used the words "operating property" with reference to a facility that is capable of generating, transmitting, or distributing electrical energy *upon acquisition.*

To place the narrow literal meaning upon "operating property" as used in RCW 54.28.080 would render the statute meaningless. To say that "operating property" includes all property that will be utilized in the generation of

electrical energy is to ignore the legislative references to operating property in the past and the express language of RCW 54.28.080. Established rules of statutory construction require that each word and phrase be given meaning and effect. *Chelan County v. Fellers*, 65 Wn.2d 943, 400 P.2d 609 (1965), and cases cited therein.

█ Moreover, the use of the word "an" preceding the words "operating property" in RCW 54.28.080, indicates a legislative intent to limit the effect of this statute to a certain class of property that is acquired by public utility districts. It negates the idea of including all property acquired by public utility districts within the ambit of the statute. If the legislature had wished to include all property acquired by the defendants for the transmission, distribution, or generation of electrical energy, it could have used the words "all property." The question then becomes what class of property was the legislature referring to when it used the terms "operating property" in RCW 54.28.080. We believe the legislature used the words "operating property" with reference to a facility capable of generating, transmitting, or distributing electrical energy upon acquisition. It is obvious to us that RCW 54.28.080 is designed to grant relief in the special situation which results when a public utility district acquires an operating facility from a private company. The acquisition of such a plant creates a loss of a large taxable item for the school districts which they relied upon in issuing bonds.

Compensation to the school districts where nonoperating property is removed from the tax rolls is provided for in RCW 54.28.020, which imposes a tax upon the privilege of engaging in the business of operating works, plants, or facilities for the generation, distribution and sale of electric energy. RCW 54.28.090 requires that a minimum of 35 percent of said taxes be apportioned to the school districts within the county having district properties within their limits. The great increase in revenue generated by the privilege tax imposed in RCW 54.28.020 would conceivably

offset the loss of revenues resulting from nonoperating properties being removed from the tax rolls.

Considering RCW 54.28 in its entirety, we are satisfied, as heretofore stated, that the legislature intended "operating property," as used in RCW 54.28.080, to mean a complete functional electrical utility facility. Since the acquired property in question was otherwise, we hold it does not come within the ambit of the statute, and the respondent school district therefore is not entitled to the payments provided for therein.

The defendant also contends that the title of Laws of 1949, ch. 227, p. 799, is in violation of article 2, section 19 of our state constitution. We disagree.

Article 2, section 19 of our state constitution provides: "No bill shall embrace more than one subject, and that shall be expressed in the title."

It is well established in this jurisdiction that article 2, section 19 of our state constitution is complied with if the title of the act gives notice of its contents so as to reasonably lead to an inquiry into its contents. *State v. Lounsbery*, 74 Wn.2d 659, 445 P.2d 1017 (1968). It is also well established that the title to an act may be general, and all matters incidental or germane thereto may be written into the body of the law. *State v. Lounsbery, supra.*

The title of the Laws of 1949, ch. 227, p. 799, provides in part:

> AN ACT . . . relating to privilege taxes against, and the payment of certain obligations by, public utility districts . . .

Section 1 (g) of the act (now RCW 54.28.080), which the defendant contends is outside the scope of the title, requires that the public utility districts pay a certain proportion of the bonded indebtedness of the school districts when the public utility districts acquire an operating property within the boundaries of the school district. The title of the act specifically mentions the payment of certain obligations by public utility districts and is sufficient to put a public

utility district on notice to inquire into the contents of the act.

The judgment of the trial court is reversed.

HALE, C.J., ROSELLINI, HAMILTON, and STAFFORD, JJ., concur.

BRACHTENBACH, J. (dissenting)—When a public utility district acquires property previously held by private interests, that property is taken from the tax rolls. Recognizing the potential burden to school districts which had issued bonds in reliance on the now-exempt property, the legislature, in RCW 54.28.080, provided protection to the districts by requiring the public utility district to pay the same amount of principal and interest that the property would have produced in private ownership.

To me the intent of the statute is that simple, logical and clear. Yet the majority thwarts that intent by holding that it is the nature and use of the property by the private owner *prior to acquisition* which governs application of the statute.

The majority opinion leads to the anomalous result that the acquisition by a public utility district of what was in private ownership a valuable nongenerating property requires no payment to the school district while the acquisition of an equally valuable generating property requires payment. Obviously the result to the school district is exactly the same in either case—it has been deprived of bond payment moneys from property on the tax rolls when the bonds were authorized. Considering the relevant sections of RCW 54.28, I cannot attribute to the legislature such an unreasonable and illogical intent.

The pertinent portion of RCW 54.28.080 reads: "Whenever any [public utility] district acquires an operating property from any private person, firm, or corporation . . ." The majority contends that if the legislature had intended to include within the ambit of RCW 54.28.080 all property acquired by public utility districts for the gener-

ation, transmission or distribution of electric energy, it could have used the words "all property." But it is just as logical to argue that if the legislature had intended to trigger the statute only upon the acquisition by a public utility district of a facility *previously* used for such purposes, it could have said so.

Moreover, the majority overlooks the fact that in RCW 54.28.010 (which is controlling for all of chapter 54.28) the legislature did define "operating property" as *"all* of the property *utilized* by a public utility district in the operation of a plant or system for the generation, transmission, or distribution of electric energy for sale . . ." (Italics mine.) The pivotal issue, not dealt with by the majority, is the meaning of "utilized" in RCW 54.28.010.

The majority points out a potential inconsistency between RCW 54.28.010 and RCW 54.28.080. If one assumes—as the majority implicitly does—that "utilized" in RCW 54.28.010 is restricted to use of the property prior to the public utility district acquisition, the two sections cannot be read together. For if one incorporates this definition of "utilized" from RCW 54.28.010 into .080, it would literally mean that .080 applies only when a public utility district acquires from a private person, firm or corporation property which was previously used by the public utility district for the generation, transmission or distribution of electrical energy for sale. Such a narrow reading of the legislative intent is strained at best.

The parties have stipulated that without the property in question herein, the production of electric energy could not be accomplished. I believe that "utilized" in RCW 54.28.010 was intended to include property, such as this, which is to be so utilized *after* its acquisition by the public utility district. Indeed, the common definitions of the word "utilize" suggest an element of change in use:

> Utilize: to make useful: turn to profitable account or use: make use of: convert to use.

*Webster's Third New International Dictionary* (1963).

Applying this broader definition of "utilized," RCW 54.28.010 is consistent with RCW 54.28.080. Indeed this interpretation leads to the logical result that property which becomes exempt from taxation must bear its proportionate share of existing bonded indebtedness. From the standpoint of the school district's obligation to pay its bonded indebtedness it matters little whether it loses part of its revenue by a public utility district's acquiring a taxed generating plant or by a public utility district's acquiring extensive farmlands of equal value for reservoir purposes. Conceivably the dollar loss could be identical, but the majority grants reimbursement in one case and denies it in the other. We should avoid statutory construction which leads to a gross injustice or absurd results. *Amburn v. Daly*, 81 Wn.2d 241, 501 P.2d 178 (1972). The legislature must have intended that the term "utilized" include property acquired by a public utility district for the future creation of a generating facility.

The remaining arguments offered by the majority to support its illogical result are unpersuasive. The contention that the allocation to school districts of part of the privilege tax levied on public utility districts by RCW 54.28.020 could offset the loss of revenue resulting from the removal of nonoperating property from the tax rolls is erroneous and purely makeweight. There is nothing in the record to show a correlation between these drastically different sources of revenue. In fact, the school distribution formula requires a reduction in state funds of 85 percent of receipts from public utility district funds distributed pursuant to RCW 54.28.090, while bond redemption funds paid pursuant to RCW 54.28.080 are not used to reduce the state fund distributions. Attorney General Opinion, Aug. 13, 1963. The difference in fiscal impact upon the local district is apparent and refutes the majority's effort to justify its result on that basis.

The majority's tracing of the legislative history of the statute adds absolutely nothing to a determination of legis-

lative intent. The definition of "operating property" has remained exactly the same throughout the several enactments. RCW 54.28.080 resulted from Laws of 1949, ch. 227, § 1(g). As then enacted it read "Whenever any district hereafter acquires an operating property, *as defined in section 1 of this act* . . ." The underlined portion was omitted in Laws of 1957, ch. 278, § 8. The omitted language was surplusage as RCW 54.28.010 mandates that its definitions apply to all provisions of the chapter. Thus, I submit that no aid is rendered to the issue by the legislative history.

The final speculation engaged in by the majority is that the legislature intended the statute to apply only when there is a loss of a *large* taxable item. The record does not indicate the value of the property involved herein. The language of the statute indicates no such intent. The surface appeal of that conjecture disappears when one recognizes that the loss of bond redemption funds may be just as great when a public utility district acquires thousands of acres of valuable farmlands for reservoir purposes as when it acquires a generating facility or a transmission line. In fact, the majority's opinion can be read to require acquisition of an entire facility before the statute applies. There is nothing in the statute to create such a holding. Even under the majority's interpretation, the statute should apply when a public utility district acquires a substation, for example, from a private utility.

I would affirm the trial court and require the defendant to comply with RCW 54.28.080.

FINLEY, WRIGHT, and UTTER, JJ., concur with BRACHTENBACH, J.

Petition for rehearing denied November 29, 1973.