[No. 134-41200-1. Division One. December 31, 1969.]
Panel 2

*In the Matter of the Petition of the* CITY OF KENT.

THE CITY OF KENT, *Respondent,* v. ELDON L. LAMB *et al.,*
*Petitioners.*

*Eldon L. Lamb,* pro se.

*Shellan, Pain, Stone & Swanson* and *John K. Pain, Jr.,*
for respondent.

HOROWITZ, A. C. J.—The City of Kent (Kent) brought
condemnation proceedings to acquire a portion of respond-
ents' residence property for the widening and improvement
of James Street. The trial court, after a hearing in which
the respondents were represented by counsel, entered the
required order adjudicating public use and necessity. Re-

spondents then obtained a writ of certiorari to review the order so entered. Respondents appear pro se.

Kent is a city of the third class. (RCW 35.24.) The condemnation proceeding was brought pursuant to RCW 8.12-.030 reading as follows:

> Every city and town and each unclassified city and town within the state of Washington, is hereby authorized and empowered to *condemn land and property,* including state, county and school lands and property *for streets, avenues, alleys, highways,* bridges, approaches, culverts, drains, ditches, public squares, public markets, city and town halls, jails and other public buildings, and for the opening and widening, widening and extending, altering and straightening of any street, avenue, alley or highway, and to damage any land or other property for any such purpose or for the purpose of making changes in the grade of any street, avenue, alley or highway, or for the construction of slopes or retaining walls for cuts and fills upon real property abutting on any street, avenue, alley or highway now ordered to be, or such as shall hereafter be ordered to be opened, extended, altered, straightened or graded, or for the purpose of draining swamps, marshes, tidelands, tide flats or ponds, or filling the same, within the limits of such city, *and to condemn land or property, or to damage the same, either within or without the limits of such city for public parks, drives and boulevards,* hospitals, pesthouses, drains and sewers, garbage crematories and destructors and dumping grounds for the destruction, deposit or burial of dead animals, manure, dung, rubbish, and other offal, and for aqueducts, reservoirs, pumping stations and other structures for conveying into and through such city a supply of fresh water, and for the purpose of protecting such supply of fresh water from pollution, and to condemn land and other property and damage the same for such and for any other public use after just compensation having been first made or paid into court for the owner in the manner prescribed by this chapter.

(Italics ours.) Purporting to act under RCW 8.12.030 and RCW 35.24.310,[1] the City of Kent enacted ordinance 1550.

[1] "Whenever it shall become necessary for the city to take or damage private property for the purpose of establishing, laying out, extending and widening streets and other public highways and places within the

Section 1 states that condemnation is "for the purpose of obtaining the necessary property and property rights for the improvement of James Street in the City of Kent . . ." The condemnation petition alleges: "The property and property rights sought to be taken or damaged are situated in the City of Kent, King County, Washington . . ."

James Street is presently a 2-lane street. The city's project contemplates widening that street on both sides thereof to a 4-lane facility from East Valley Highway on the west to Benson Road on the east. At some intersections there will be a fifth lane designated a "storage" lane. The court found that respondents' property abuts James Street on the south; that the center line of that street at that point is the boundary line between the City of Kent and King County; that respondents' property actually lies outside the City of Kent in King County; that in order to widen James Street on the south in front of respondents' property it is necessary that respondents' property outside the city limits be acquired, and that the City of Kent has the requisite statutory authority.

The controlling issue is whether the City of Kent has the requisite statutory authority to condemn respondents' property outside the city limits for the contemplated improvement of James Street.

██ In construing RCW 8.12.030 for the purpose of ascertaining the scope of the power of eminent domain conferred upon cities, we apply commonly understood rules of construction, including (1) the power conferred is to be strictly construed; such power must be delegated in express terms or exist by clear implication (*Des Moines v. Hemenway*, 73 Wn.2d 130, 437 P.2d 171 (1968)); (2) the words of

city, or for the purpose of securing rights-of-way for drains, sewers and aqueducts, and for the purpose of widening, straightening or diverting the channels of streams and the improvement of waterfronts, or any other public purpose, and the city council cannot agree with the owner thereof as to the price to be paid, the city council may proceed to acquire, take or damage the same in the manner provided by chapter 8.12 RCW or by chapter 8.20 RCW." (RCW 35.24.310)

the statute must be understood in their usual and ordinary sense in the absence of statutory definition (*State v. Roadhs*, 71 Wn.2d 705, 430 P.2d 586 (1967)); (3) they must be read in context (*Mercer Island v. Kaltenbach*, 60 Wn.2d 105, 371 P.2d 1009 (1962)); (4) they must be construed to make the statute purposeful and meaningful (*Davis v. Washington Toll Bridge Auth.*, 57 Wn.2d 428, 439, 357 P.2d 710 (1960)); (5) they must be construed to give effect to all the language used (*Danley v. Cooper*, 62 Wn.2d 179, 381 P.2d 747 (1963)); (6) they must be construed to give effect to each word if possible (*Chelan County v. Fellers*, 65 Wn.2d 943, 400 P.2d 609 (1965)); (7) they must be construed so that each part is given effect with every other part or section (*Tacoma v. Cavanaugh*, 45 Wn.2d 500, 275 P.2d 933 (1954)); and (8) the words should not be read in isolation (*Markham Advertising Co. v. State*, 73 Wn.2d 405, 439 P.2d 248 (1968)).

RCW 8.12.030 (Laws of 1915, ch. 154 § 1, p. 446) amended Laws of 1907, ch. 153 § 1, p. 316 in respects not here material. It is instructive to examine the substantially contemporary dictionary meanings of the terms "boulevard", "street" and "drive". Thus, in The Oxford Dictionary, A New English Dictionary on Historical Principles 1020 (1888) the word "boulevard" is defined as "A broad street, promenade, or walk, planted with rows of trees. Chiefly applied to streets of this kind in Paris, or to others which it is intended to compare to them." In Kinney's Law Dictionary & Glossary 118 (1893) "boulevard" is defined as "A broad avenue set apart for ornament and for purposes of amusement and exercise. While a carriage way is a feature, a boulevard is not technically a street or highway." Subsequent dictionary definitions of the word "boulevard" emphasize the more pretentious character of a boulevard as compared with an ordinary street or avenue. Anderson's Dictionary of Law 133 (1889); Black's Law Dictionary 147 (1910); The Oxford English Dictionary 1020 (1961); Webster's Third New International Dictionary (Unabridged) 260 (1961). Anderson's Dictionary of Law 981 (1889) defines

the word "street" as "Strictly, a paved way or road, but now used for any way or road in a city or village." Kinney's Law Dictionary & Glossary 635 (1893) defines the word "street" as "A public way in a city or village, including sidewalks as well as carriage way." Subsequent dictionary definitions of the word "street" emphasize the fact that it is a public thoroughfare in a city, town or village, including all area within the right-of-way and narrower than an avenue or boulevard. Law Dictionary—English A Dictionary of Words & Phrases Used in Ancient & Modern Law 750 (1899); Black's Law Dictionary 1113 (2d ed. 1910); The Oxford Dictionary, A New English Dictionary on Historical Principles, 1002 (1919); Webster's Third New International Dictionary (Unabridged) 2259 (1961); The Oxford English Dictionary 1102 (1961). The Oxford Dictionary, A New English Dictionary on Historical Principles, 673 (1897) defines "drive" as "A carriage road; esp. the private road leading to a house." Definitions similar in content are found in Webster's Third New International Dictionary (Unabridged) 692 (1961); The Oxford English Dictionary, 673 (1961). See also Webster's Third New International Dictionary 2259 (1969); 10 McQuillin, Municipal Corporations §§ 30.03, 30.04 (3d ed. 1966); 39 Am. Jur. 2d *Highways, Streets and Bridges* § 8, 33 (1968).

It is evident that both lay and law dictionaries and legal treatises have in the past and have continued to make a distinction between "boulevard", "street" and "drive." The distinction between streets, drives and boulevards is emphasized by the fact that the words "drives" and "boulevards" are used in the context of the phrase "public parks, drives and boulevards."

 In light of the rules of statutory construction above reviewed, it is to be presumed that the legislature intended by RCW 8.12.030 that streets, drives and boulevards each meant something different for purposes of the statute. It is true that all three terms describe a thoroughfare which provides a means of transportation for persons and property; yet each term is different and capable of different

meanings. In the instant case there are no findings or evidence or claim that the proposed 4-lane facility is intended primarily for use as a pleasure thoroughfare or intended to have specific qualities or characteristics of a "drive" or "boulevard" as those terms have been above defined. It is no answer to say, as does Kent, that the statute should "not be construed so strictly as to defeat the evident purpose of the grant." *Tacoma v. Welcker*, 65 Wn.2d 677, 683, 399 P.2d 330 (1965). The quoted language is inapplicable here. The grant of the eminent domain power made by RCW 8.12.030 itself makes a distinction between streets "within the limits of" the City of Kent and drives and boulevards "within or without the limits of such city." Were we to ignore the distinguishing characteristics of "street", "drive" and "boulevard" we would defeat the intent and purpose of the statute.

The order of public use and necessity is reversed.

UTTER and STAFFORD, JJ., concur.