[No. 2516-1.    Division One.    May 12, 1975.]

G. HARLAN LEWIS *et al, Respondents,* v. THE CITY OF
MEDINA, *Appellant.*

*Benson, Chadwick, Stege & Wines* and *Stephen F. Chadwick, Jr.,* for appellant.

*Philip P. Malone,* for respondents.

FARRIS, J.—On application for a writ of mandamus, the trial court reversed the City of Medina's Board of Adjustment and required the City to issue a building permit to G. Harlan Lewis and Harry G. Lewis. The City appeals.

In 1972, G. Harlan Lewis (as executor of his mother's estate) applied for a variance of the City of Medina's lot size and setback requirements in order to secure a building permit to construct a residence on a lot in the estate which had less than the required 6,000-square-foot area.[1]

The parcel was created in 1948 when it was divided and a larger, improved, adjoining parcel was sold. The Lewis parents owned the land which had been subdivided once prior to the 1948 division; only the parcel in question has been retained.

The father died intestate in 1948. "[T]o facilitate an easier probating of the estate," the Lewis brothers "deeded over" all title and interest in the estate to their mother. When the larger parcel was sold in June of 1948 pursuant to a real estate contract, however, the brothers signed the contract and the subsequent (1952) fulfillment deed individually. Their mother signed individually and as executrix. During that period, G. Harlan Lewis held and exercised power of attorney for his mother.

Medina was incorporated in 1955 and thereafter developed zoning regulations which included the following requirements for the issuance of a variance:

[T]he Board shall not vary any of the rules, regulations, or provisions of the zoning ordinances unless it shall find, after public hearing, that *all of the following conditions* exist in each case of an application for a variance:
1. That the land and/or structure in question cannot be reasonably used, and cannot yield a reasonable return, if used only for the purposes permitted and in accordance with other requirements in the land

---

[1]Although Medina now requires 16,000 square feet of area, at the time the parcel in question was platted, it was a part of King County which required only 6,000 square feet. The parties recognize that the King County zoning requirements regulate the parcel as provided for in a "grandfather" clause of the Medina zoning regulations.

use district in which the land and/or structure is located;

2. *That the plight of the owner is due to unique circumstances* which are not the general condition of the neighborhood, and *are not the result of the owner's action*;

3. That the use requested by the applicant, if established, will not be of a general classification differing from the essential use provisions of the land use district in which the land and/or structure is located.

(Italics ours.) City of Medina ordinance No. 159 (covering use of land) § 1-21.05.

The Lewises' application for a variance was denied. The Board of Adjustment, although possessing the power to grant the variance "[w]here unnecessary hardships and practical difficulties are created for the landowner in the application of . . . zoning ordinances," City of Medina ordinance No. 159 § 1-21.05, denied it relying upon subparagraph 2, when it found as a fact:

The subdivision of the larger tract of land of which the subject property was a part was carried out by the applicant G. Harlan Lewis acting for himself and his mother, Melita G. Lewis, by sale under real estate contract dated June 30th, 1948 wherein one Marie C. Tenny was purchaser. A fulfillment deed in respect to such contract was recorded January 17th, 1952 and the applicant has had no interest in the property so transferred since said date.

Board of Adjustment supplementary finding of fact No. 3; and held:

Two requirements for any variance are that the hardship be unique to the applicant and also not the result of his own action. In this regard Mr. Harlan Lewis as executor, or he and his brother as heirs, stand in the position of their predecessors who subdivided the property leaving a corner lot of such awkward dimensions and less than 6,000 square feet in area. The applicant has failed to show when or by whom Tract G was subdivided.

Board of Adjustment decision No. 3.

The trial court found that:

> The hardship that results from a denial of variance by the City of Medina . . . was not a hardship created or self-inflicted by the plaintiffs or their deceased mother *while the zoning laws of Medina were in effect.*

(Italics ours.) Finding of fact No. 9. The trial court then justified a judgment against the City on the ground that the hardship is sufficiently great and the threat to public health and safety is sufficiently slight to require the issuance of a variance.

■ This appeal questions the proper scope of review of a board of adjustment's denial of a variance. The Supreme Court has decided that issue: the reviewing court must limit its inquiry to a determination of whether the board's "conclusions may be said to be, *as a matter of law*, arbitrary, capricious, or contrary to law." *Reiger v. Seattle*, 57 Wn.2d 651, 653, 359 P.2d 151 (1961); *Helland v. King County Civil Serv. Comm'n*, 84 Wn.2d 858, 529 P.2d 1058 (1975).

■ A finding
can be held to be "arbitrary or capricious" if there is no support for it in the record and it is therefore a "willful and unreasoning action, in disregard of facts and circumstances." *Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n*, 69 Wn.2d 472, 479, 418 P.2d 735 (1966).

*Stempel v. Department of Water Resources*, 82 Wn.2d 109, 114, 508 P.2d 166 (1973).

■ A conclusion is contrary to law when the application of valid factual findings results in a holding inconsistent with a proper construction of the governing law.

A board of adjustment is only permitted to grant a variance from a zoning ordinance within the guidelines set forth in that zoning ordinance. *Thomson Methodist Church v. Zoning Board of Review*, 99 R.I. 675, 210 A.2d 138, 141 (1965).

*L.M. Pike & Son, Inc. v. Waterford*, 130 Vt. 432, 434, 296 A.2d 262 (1972). *See Reichard v. Zoning Bd. of Appeals*, 8 Ill. App. 3d 374, 290 N.E.2d 349 (1972); *Jacobs v. Philadelphia Zoning Bd. of Adjustment*, 1 Pa. Commw. 197, 273

A.2d 746 (1971); *cf. Cooper-George Co. v. Spokane*, 3 Wn. App. 416, 475 P.2d 568 (1970), wherein we held that the Board's disregard of its own statutory requirements justifies the conclusion that a denial of a variance is arbitrary and capricious.

Although a record of the Board of Adjustment's hearing on the issue is not before us, there is no dispute between the parties or the findings of the court and the Board on the relevant factual points.

Whether the Board's denial of the variance here is contrary to law turns upon the resolution of two issues: First, is the variance ordinance applicable to "authors" who subdivide the land prior to the enactment of the ordinance and, second, if it is, are the Lewis brothers legally responsible for the creation of the parcel by their "predecessor"? If the answer to these questions is yes, the Board and the trial court are foreclosed from granting the variance and the Board's decision must be reinstated.

█ Generally, the retroactive application of an ordinance is disfavored in the law, *see In re Estate of Fotheringham*, 183 Wash. 579, 49 P.2d 480 (1935), and will not be presumed absent a clear expression of intent by the legislature. *See Corak v. Department of Labor & Indus.*, 2 Wn. App. 792, 469 P.2d 957 (1970). However, an ordinance is not considered retroactive merely because it relates to prior facts or transactions. *See State v. Scheffel*, 82 Wn.2d 872, 514 P.2d 1052 (1973); *Earle v. Froedtert Grain & Malting Co.*, 197 Wash. 341, 85 P.2d 264 (1938). But where the ordinance

"takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, . . ."

it is deemed retroactive. *Society for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756 (No. 13,156) (C.C.D.N.H. 1814), quoted with approval in *Hammack v. Monroe St. Lumber Co.*, 54 Wn.2d 224, 229, 339 P.2d 684 (1959).

The Medina variance ordinance is not being retroactively applied. The parcel did not conform to the King County lot requirements in effect in 1948 and thus would have required a variance for the issuance of a building permit even then.

■ The Board of Adjustment's ruling that the Lewis brothers stand in the shoes of their predecessor, their mother, for purposes of the application of the hardship exception is supported by the record and by decisions on the issue. Although the brothers received the parcel by devise, they were participants in and well aware of the development which created the substandard parcel. *See Borough of Baldwin v. Bench*, 11 Pa. Commw. 410, 315 A.2d 911 (1974). Under such circumstances, the hardship was self-inflicted. Further, when the request for a variance was before the Board, the petitioner was the estate of Melita G. Lewis. Her estate can properly be held to stand in her shoes. The Board of Adjustment was therefore foreclosed by ordinance from granting a variance when it found as a fact upon substantial evidence that the Lewis brothers created their own hardship. The Board properly failed to consider whether the denial of the request of a variance "creates a substantial, serious, and real hardship upon . . . the plaintiffs . . . and for all intents and purposes destroys the value thereof." Finding of fact No. 9. The fact that such hardship, if any, was self-inflicted resolves the issue.[2] There is no attack upon the constitutionality and lawfulness of the ordinance (finding of fact No. 10).

The Board's ruling is consistent with variance provisions

[2] Whether a relative who would be barred from receiving a variance because the hardship is self-inflicted can transfer the parcel to another relative who had no knowledge of or participation in the creation of the hardship and thereby avoid the self-inflicted question is not before us, but dicta in *Borough of Baldwin v. Bench, supra,* suggests such a transferee is also barred.

of the ordinance and therefore was not arbitrary or capricious.

Reversed.

SWANSON, J., concurs.

JAMES, J. (dissenting)—I would affirm. If unreasonable in either concept or application, the implementation of zoning restrictions can result in an unconstitutional taking of private property for a public purpose without just compensation.

> It is a general rule that zoning laws cannot render private property valueless. Hence, if the application of a zoning law has the effect of completely depriving an owner of the beneficial use of his property by precluding all practical uses or the only use to which it is reasonably adapted, the law is objectionable. . . . a zoning ordinance may be valid in its general aspects, yet in its application to a particular piece of property it may be so clearly arbitrary and unreasonable as to result in confiscation in violation of the constitutional rights of the owner.

(Footnotes omitted.) 8 E. McQuillin, *The Law of Municipal Corporations* § 25.45 (3d ed. rev. vol. 1965).

Medina's Comprehensive Plan honors "grandfather" rights and is, therefore, not unreasonable in *concept*.

1. It permits the continuance of nonconforming uses which predate its adoption. City of Medina ordinance No. 159 § 5-1.14.

2. With reasonable limitations, it permits the construction of nonconforming improvements "without the necessity of a variance" if the parcel of land "would have qualified as a building site under minimum lot size and frontage regulations applicable at the time of its acquisition . . ." City of Medina ordinance No. 159 § 5-1.15.

3. It provides for the granting of variances "in harmony with the general purpose and intent of [the] ordinance" "[w]here unnecessary hardships and practical difficulties are created for the landowner." City of Medina ordinance No. 159 § 1-21.05.

The issue presented by this appeal is whether the Board of Adjustment arbitrarily and unreasonably *applied* Medina's zoning ordinance in denying the Lewises' application for a variance.

The expressly stated purpose of the zoning ordinance provisions which empower Medina's Board of Adjustment to grant variances is to insure that "substantial justice [be] done." But the Board's power to grant variances is not unlimited. As pointed out by the majority, before granting a variance, the Board is required to make three findings of fact. They are that:

1. Without a variance, "the land . . . cannot be reasonably used, . . ." City of Medina ordinance No. 159 § 1-21.05;

2. The plight of the owner is due to unique circumstances which . . . are not the result of the owner's action." City of Medina ordinance No. 159 § 1-21.05;

3. The contemplated use is in conformity with "the essential use provisions of the land use district in which the land . . . is located." City of Medina ordinance No. 159 § 1-21.05.

It is not disputed (1) that the variance sought by the Lewises is for a use in conformity with the zoning of the district in which the land is located, (2) that unless granted a variance, the Lewises' land cannot be reasonably used, and (3) that the *sole* basis for the Board's denial of a variance was its finding that the Lewises' "hardship" was self-inflicted. Undisputed evidence supports the trial judge's findings that:

HISTORY OF LOT: The property is the third parcel of land remaining from a larger triangularly-shaped parcel of land which was acquired by the deceased father of the plaintiffs in 1941, which then consisted of approximately 31,000 square feet, lying between the two streets. Of the large triangle, the first parcel which was sold was prior to 1948, lying at the widest point between the two streets to the north, leaving the second parcel and the subject lot remaining to the south. The parents of the plaintiffs then built a residence on the second parcel, which after the

death of the deceased father was sold by the widow, Melita G. Lewis, to a party by the name of Neuberger, in 1952, leaving the subject lot with the common boundary between it and the lot and residence sold. The widow then made application for the building permit from King County upon that application and set of plans. The building permit secured by the deceased, Melita G. Lewis, in 1952 was not acted upon, and no improvements have been made on the lot.

Finding of fact No. 5.

LOT AREA: The area of the lot is 5,150 square feet, plus or minus 100 feet, that was created in 1948 after the deceased mother of the plaintiffs, individually and in liquidation of her deceased husband's estate, sold the adjoining parcel to the north of the subject lot. In 1948 the King County Zoning Resolution provided a minimum area of 6,000 square feet of a lot for building a residence. The deceased mother did not create the lot for speculation purposes in hopes of securing a variance 25 years ago from the minimum requirement at that time. Instead, application was made to King County for a building permit for a residence and that that [sic] permit was issued by mistake without an application being required for variance from the minimum area requirement, which at that time was believed to not be necessary, for it was mistakenly believed that the area was 6,000 square feet or more. . . .

. . . The plot plan submitted to King County for which it issued a permit complied with all setback requirements of the Resolution of King County. Except for the minimum area requirement and the encroachment, the plot plan was in compliance with the zoning resolution of King County.

Finding of fact No. 8.

In his memorandum decision, the trial judge said:

The only evidence in the case shows conclusively that construction of the house planned by the plaintiffs will do no damage to the neighbors and will not be inconsistent with the public health, safety and welfare of Medina as a whole. Cities may lawfully control lot sizes for building purposes and may lawfully provide for a 16,000 square feet minimum where reasonable; but this is a

unique situation. Plaintiffs' small building site is isolated from neighbors by streets except on the back where adequate space is provided in accordance with the ordinance.

The lot size presents no potential harm to the city in fire protection, in providing for utilities, (water, sewers, etc.), or even esthetics. If this house were to be jammed in between other houses on a lot which would in any way vary the general plan of the city another situation would be presented. The city has offered no evidence that the granting of a variance would be prejudicial to the public health, safety and welfare of a neighbor or other residents of the city unless it be that it is not in harmony with the spirit of the zoning ordinance and plan. This contention might have some merit in many cases, but in this particular situation the use of this lot for building a house has no adverse effect on the general plan or spirit of Medina's ordinance, because its location is unique and adjacent to streets rather than neighbors. The general plan for Medina is to protect the city as a residential community with large lots, to encourage construction of valuable improvements and add to the amenities which make life pleasant.

This vague concept of spirit and harmony is outweighed by the enormous damage to the plaintiffs in making this lot valueless except to the next door neighbor and there is no rational reason why he should want it. I am convinced therefore that some showing must be made that the denial of the variance would serve the public health, safety and welfare of the inhabitants of Medina. No such showing has been made.

Were plaintiffs and their predecessors the authors of their trouble and therefore cannot secure a variance? I think not. It is true that at the time plaintiffs' parents sold portions of their property in 1948 or thereabouts the King County Ordinance provided minimum area of 6,000 square feet. The retained property is more than 5/6ths of that area and there is every reason to believe that King County would have permitted a proper building to be erected. The granting of the building permit shows that conclusively, albeit a variance should have been secured at that time in view of the mistake in believing the lot to exceed 6,000 square feet. It would be unjust to conclude that this was an unbuildable lot at the time of the sale of portions of the larger lot in 1948.

I do not agree with the majority's conclusion that the subdivision of their property by the Lewises *prior* to the enactment of Medina's zoning ordinance was a self-inflicted "plight" which "foreclosed" the granting of a variance. When the Lewises subdivided their property in 1948, they could not know that in 1964 Medina would require a 16,-000-square-foot minimum for a residential lot. They were bound to know only that King County zoning required a 6,000-square-foot minimum. But, as the trial judge concluded, the substandard lot was not unbuildable under the county·zoning ordinances. In fact, a building permit was issued. The Lewises did not deliberately attempt to circumvent the county zoning restrictions. The creation of a substandard parcel was an inadvertent mistake.

The self-inflicted "plight" of the Lewises was *not* the creation of a lot which was per se unbuildable. It was the creation of a lot which would require a variance from King County. An application for a variance would have been heard on its merits. The probabilities are that it would have been granted.

The Lewises, therefore, had a constitutionally guaranteed "grandfather" property right which Medina was bound to recognize. It was the right to have their request for a variance considered on its merits. To deny them the right to a consideration of the merits through application of restrictions not adopted until 1964 was arbitrary and capricious.

In view of the minimal impact upon Medina's comprehensive plan and because of the extreme hardship suffered by the Lewises, the Board's denial of a variance was unreasonable and arbitrary. The Board did not fulfill its obligation to afford the Lewises "substantial justice."

Petition for rehearing denied September 29, 1975.

Appealed to Supreme Court October 6, 1975.