[No. 1202-2.    Division Two.    June 30, 1975.]

CLINTON G. WILLIAMS *et al, Respondents*, v. PIERCE COUNTY *et al, Appellants.*

Donald F. Herron, *Prosecuting Attorney*, and *Mark L. Bubenik, Deputy*; and *Thomas J. Kraft*, for appellants.

*Keith D. McGoffin* and *Burkey, Marsico, Rovai, McGoffin, Turner & Mason*, for respondents.

PEARSON, J.—This is an appeal from a superior court decision voiding the issuance of an unclassified (special) use permit by the Pierce County Board of County Commissioners.

The question presented on this appeal is whether the provisions of the Pierce County Zoning Code allow the Board of County Commissioners to issue an unclassified use permit in an "MP-Industrial Park" zone. We answer the question affirmatively; accordingly, we reverse the ruling of the trial court.

The property which is the subject of this lawsuit was known as "Thun Field" (now "Thun Field Industrial Park") and has been used as an airfield and dragstrip since the early 1950's. In 1966 the appellant Puyallup Valley Development Company purchased this land and made plans to convert the area into an industrial park. In 1967 the company obtained a rezone of the land from "G-General Use" to "MP-Industrial Park." A few years later the development company leased a portion of this land with an option to purchase to the appellant, International Raceway Parks, Inc., for the purpose of operating a "motocross" (motorcycle) racetrack. When the construction of the racetrack began in 1970, the appellant Pierce County sought an order restraining this nonconforming use. The matter was resolved when the racetrack developers agreed to seek an unclassified use permit. The developers and Pierce County further agreed to abide by the order of the Board of County Commissioners. In 1971 a hearing before the Pierce County Planning Commission was held on the developer's application. The respondents, who are adjacent property owners, attended that hearing and vigorously opposed the issuance of the permit. The Planning Commission refused to grant the permit, but on appeal the Board of County Commissioners reversed the Planning Commission's decision and issued the permit, subject to conditions. The respondents obtained a writ of review in superior court. The court remanded the matter to the Board for the consideration of certain tape-recorded evidence taken at the Planning Commission's hearing. The Board listened to that evidence and once again issued the permit. The original petition for review was brought on for a full hearing before the superior court, and as indicated above, the court reversed and vacated the Board's order on the grounds that the MP-Industrial Park classification does not authorize unclassified uses.

The resolution of this appeal requires an examination and interpretation of Pierce County Zoning Code 9.64.020

(permitted uses in the MP-Industrial Park zone) which in turn should be viewed within the context of certain other related provisions of the zoning code.

The MP-Industrial Park classification is a planned zone designed to promote high industrial development and environmental standards. Pierce County zoning code 9.64.010. The zoning code contains two other industrial classifications: M-1 Light Manufacturing, and M-2 Heavy Manufacturing. Zoning code 9.08.030 states:

> In the "M" classifications, the M-1 classification and the uses permitted therein are considered to be the lightest and most restricted use-wise; the M-2 classification and the uses permitted therein are considered heavier and the least restricted. The M-P classification use-wise is the same as the M-2 classification but by reason of more stringent performance standards is considered more restrictive than the M-2 classification.

We turn now to the provision which is the focal point of this dispute. Zoning code 9.64.020 lists the uses permitted in the MP-Industrial Park classification:

> The following uses only are permitted, and as specifically provided by this chapter:
> (1) Any use *first permitted* in the M-1 and M-2 classifications, provided that M-2 uses requiring a conditional use permit may locate in an MP zone only if a conditional use permit has been granted.

(Italics ours. The remaining provisions of this section are irrelevant to this appeal.)

Zoning code 9.60.020 lists the uses permitted in the M-1 classification. Subsection (1) lists a number of uses permitted outright; racetracks are not on that list. Subsection (2) allows unclassified uses, and refers to chapter 9.74. Turning to chapter 9.74, we find that a motocross racetrack could be permitted under 9.74.010 (4) or (5).

Uses permitted in M-2 classifications are divided into three categories. Zoning code 9.62.020 (1) contains a list of some 60 uses; a racetrack is not among those listed. Subsection (2) lists a number of other uses which are conditioned

upon the procurement of a conditional use permit. Racetracks are not included on that list either. Subsection (3) permits the unclassified uses listed in chapter 9.74 which, as we stated above, does include racetracks.

Respondents contend that the phrase "[a]ny use first permitted in the M-1 and M-2 classifications" found in zoning code 9.64.020(1) refers solely to subsections (1) of sections 9.60.020 and 9.62.020 respectively, so that only those uses specified in those subsections would be permissible in the MP-Industrial Park classification. Because unclassified uses are not contained in those subsections, the Board lacked the authority to issue the unclassified use permit. Respondents urge that any other interpretation would render the word "first" as used in the phrase "any use first permitted" superfluous and without meaning.

■ We agree that the phrase "first permitted" is troublesome, and viewed out of context could easily lead to the conclusion that unclassified uses are not permitted in the MP-Industrial Park zone. But it should be remembered that the fundamental objective in construing ordinances and statutes is to ascertain the legislative (in this case, the Board of County Commissioners') intent. *Amburn v. Daly*, 81 Wn.2d 241, 501 P.2d 178 (1972); *In re Renton*, 79 Wn.2d 374, 485 P.2d 613 (1971); *Graffell v. Honeysuckle*, 30 Wn.2d 390, 191 P.2d 858 (1948). In doing this, if possible all provisions should be harmonized; no words or phrases should be rendered superfluous or meaningless. *Davis v. Washington Toll Bridge Authority*, 57 Wn.2d 428, 357 P.2d 710 (1960); *DeGrief v. Seattle*, 50 Wn.2d 1, 297 P.2d 940 (1956). But if there are two conflicting provisions, then that which is more clearly expressed should control. *Schneider v. Forcier*, 67 Wn.2d 161, 406 P.2d 935 (1965); *State ex rel. Adjustment Dep't of Olympia Credit Bureau, Inc. v. Ayer*, 9 Wn.2d 188, 114 P.2d 168 (1941). And the general spirit or purpose of the statute will prevail over expressed but inept language. *Department of Revenue v. Hoppe*, 82 Wn.2d 549, 512 P.2d 1094 (1973); *Murphy v. Campbell Inv. Co.*, 79

Wn.2d 417, 486 P.2d 1080 (1971); *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 382 P.2d 639 (1963). Importantly, unreasonable or illogical consequences should be avoided. *Yakima First Baptist Homes, Inc. v. Gray*, 82 Wn.2d 295, 510 P.2d 243 (1973); *Krystad v. Lau*, 65 Wn. 2d 827, 400 P.2d 72 (1965); *Lenci v. Seattle*, 63 Wn.2d 664, 388 P.2d 926 (1964).

Respondent's interpretation of the phrase "first permitted" as referring solely to the first subsections of the provisions applicable to the M-1 and M-2 zones conflicts with two other sections we have previously quoted: First, zoning code 9.08.030 states that the "M-P classification use-wise is the same as the M-2 classification . . ."; Second, the proviso to zoning code 9.64.020(1) clearly indicates that conditional uses (*i.e.*, those found under subsection (2) of 9.62.020) are permitted in the industrial park classification. By necessary implication, then, MP-Industrial Park uses are not limited to those found in the first subsection listed for M-2 zones. A ruling in respondent's favor would render these two provisions meaningless. This would be a result which we cannot endorse. On the contrary, we believe these two provisions are clear indicators that there was no intent on the part of the Board to limit the uses permitted in the MP-Industrial Park zone to those specified in the first subsections of 9.60.020 and 9.62.020 respectively.

Moreover, we can find no reason why the MP-Industrial Park classification would not include unclassified uses, so long as the performance standards prescribed for that zone have been met. Zoning code 9.06.780 explains unclassified uses as meaning "a use possessing characteristics of such unique and special form as to make impractical its being made automatically and consistently permissible in any defined classification or zone . . ." In other words, they are of such a nature that it cannot be said that they are wholly appropriate or inappropriate in any given zone. An examination of the unclassified uses listed in chapter 9.74 shows that they run the gamut from amusement parks to yacht clubs. Some of the uses listed would not be inimical

to an industrial park site (such as a fire station or heliport) while others would certainly be inappropriate (such as a rest home). But there is nothing inherent in this list that would render these uses, categorically speaking, repugnant to the use of land for a heavy and light manufacturing park. Also, we think it is significant that unclassified uses are permitted in much more restricted zones, such as areas zoned residential. It would be rather illogical to permit such uses in highly restricted areas, while barring them in a manufacturing district.

■ Finally, we find it significant that subsequent to the commencement of this action, the Board amended zoning code 9.64.020 to specifically allow unclassified uses in an MP-Industrial Park zone. Resolution 16673, September 4, 1973. Had the appellant's petition been filed subsequent to the enactment of the amendment, the question presented on this appeal would not be before us. Frequently it is held that where a statute, particularly one of doubtful meaning, is amended by a subsequent enactment so as to make it more certain, the subsequent amendment is a strong indicator of the legislative intention with respect to the original provision. 2A *Sutherland Statutory Contruction* § 49.11 (4th ed. C. Sands 1973). Cf. *Groves v. Meyers*, 35 Wn.2d 403, 213 P.2d 483 (1950). The 1973 amendment to zoning code 9.64.020 is an apparent expression and clarification of the Board's intent with respect to the original provision.

We believe that the only distinction between the M-1 and M-2 manufacturing zones and the MP-Industrial Park classification is the performance standards attendant to the latter. This was, of course, expressed in zoning code 9.08.030, *supra*. Thus, if the Board, in properly exercising its discretion, finds an unclassified use to be appropriate to a planned industrial park, and the performance standards have been satisfied, then there is no reason not to allow such use of property so zoned.

Reversed.

ARMSTRONG, C.J., and PETRIE, J., concur.