[No. 48221-7. En Banc. December 29, 1982.]

THE CITY OF PUYALLUP, *Respondent*, v. PACIFIC NORTHWEST BELL TELEPHONE COMPANY, ET AL, *Appellants*.

*Edward T. Shaw,* for appellant Pacific Northwest Bell Telephone Company.

*Cartano, Botzer, Larson & Birkholz,* by *Paul W. Oden,* for appellant Washington Natural Gas Company.

*Roberts & Shefelman, William G. Tonkin,* and *Blair B. Burroughs,* for respondent.

WILLIAMS, J.—Respondent, the City of Puyallup, brought suit against the appellants, Pacific Northwest Bell Telephone Company (PNB) and Washington Natural Gas Company (WNG), for business and occupation (B & O) taxes due for the period January 1, 1979, to April 30, 1980, plus applicable penalties. The trial court entered summary judgment in favor of the respondent for the amount of taxes claimed due and assessed penalties against appellants for the delinquent payment of those taxes. An appeal was taken to the Court of Appeals, Division Two. Pursuant to RCW 2.06.030(d) and RAP 4.2, the Court of Appeals certified the case to us. We reverse.

Appellants are both utility companies that have been engaged in business within the city of Puyallup from prior to January 1, 1957, to the present. By ordinance 1299, dated December 16, 1957, the respondent established a B & O tax at the rate of 3 percent of the total gross income of certain businesses. The ordinance imposed a tax for the privilege of doing business within the city limits, payable semiannually, based upon the gross subscribers' revenues of the preceding tax year.

The rate of tax imposed on businesses and utilities was increased periodically by subsequent ordinances. Ordinance 1520, passed and approved November 4, 1968, increased the rate of tax from 3 percent to 4 percent. Ordinance 1628, passed and approved December 17, 1973, increased the rate of tax from 4 percent to 6 percent. In each of the above enactments, however, the semiannual due dates for the taxes were retained as was the applicable tax base: The preceding year's gross subscribers' revenues, e.g., for the privilege of engaging in business in 1970, the 1970 tax was based on 4 percent of 1969 gross subscribers' revenues.

In 1970, respondent codified its ordinances. Those provisions dealing with the respondent's B & O taxes were codified at sections 5.08.010–.100 of the Puyallup Municipal Code. On December 17, 1979, the Puyallup City Council passed ordinance 1780 to amend chapter 5.08 of the Puyallup Municipal Code. That provision purported to increase

the tax rate from 6 percent to 8 percent from and after January 1, 1980, and alter the collection dates from semi-annually to bimonthly.

On April 7, 1980, the council passed ordinance 1795 as an amendment to ordinance 1780. The new provision attempted to apply the increased 8 percent tax rate retro-actively to the entire year 1979 by substituting "1979" for "1980" as the effective date of the new tax rate. Section 2 of the ordinance sets out the Puyallup City Council's intent in passing ordinance 1795:

> SECTION 2. It is hereby declared by the Puyallup City Council that this ordinance is necessary to correct an error occurring in the drafting of the said Ordinance No. 1780, *it being always the intent of the said City Council that there would be no interruption in the levying of the annual business and occupation taxes* which are the subject of Chapter 5.08 of the Puyallup Municipal Code, *the intent of the Council being only to change the rate of the said taxes and the time for collection thereof* as is indicated by the title of the said ordinance.

(Italics ours.) Clerk's Papers, at 112.

After passing ordinance 1795, the council enacted penalty provisions designed to encourage compliance with respondent's interpretation of its B & O taxing ordinances. Ordinance 1809 imposed penalties ranging from 10 percent to 50 percent for a failure to pay taxes due. Ordinance 1825 added a 12 percent interest provision to taxes and penalties delinquent for 90 days or more.

In a final attempt to clarify its earlier action, the council passed ordinance 1829, which stated that the intention of the council in passing ordinance 1780 was to increase the rate of its B & O tax effective with collections on and after January 1, *1980, not* January 1, *1979,* as previously stated.

On June 23, 1980, respondent filed a complaint against appellants for taxes due in the amount of 8 percent of each company's gross subscribers' revenues for the period January 1, 1979, to April 30, 1980, less taxes paid, plus applicable penalties. Appellants answered, claiming payment of all taxes allegedly due and challenging the constitutionality of

the ordinances. Both companies also counterclaimed for the recovery of taxes paid under protest.

All parties moved for summary judgment on February 6, 1981. The trial court granted respondent's motion, finding that the ordinances were proper and the presumption of legality persisted over the appellants' constitutional arguments. Penalties for the delinquent payment of taxes were assessed against PNB in the amount of $9,836.58, and against WNG in the amount of $11,361.30. Appellants' motions for reconsideration were each denied.

Appellants attack respondent's interpretation of section 5.08.050 of the Puyallup Municipal Code as an impermissible retroactive taxing measure. Further, appellants challenge the trial court's interpretation of respondent's penalty provisions for the delinquent payment of taxes. Since we find section 5.08.050 of the Puyallup Municipal Code to be ambiguous and respondent's interpretation of that ordinance to be beyond the Puyallup City Council's stated legislative intent, we deem it unnecessary to reach the other issues presented.

As a preliminary matter, we must dispose of the motion to allow additional evidence on review submitted by PNB, and joined in by WNG. Additional evidence on review may be taken by an appellate court pursuant to RAP 9.11(a), if the following criteria are met:

> The appellate court may only on its own initiative direct that additional evidence be taken before the decision of a case on review if: (1) additional proof of facts is needed to fairly resolve the issues on review, (2) the additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through post-judgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate court remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.

The so-called "additional evidence" consists of a letter to

PNB by John R. Adamson, Puyallup City Manager, demanding prompt payment of delinquent taxes under respondent's interpretation of its taxing ordinance. Attached to the letter is an opinion letter of respondent's legal counsel to Mr. Adamson which contains legal advice about a possible stance of respondent as to the taxing ordinance. Mr. Adamson invites counsel for PNB to review the opinion letter. PNB contends the letters are an indication of inconsistent legal positions taken by the Puyallup City Council on its legislative intent and interpretation of its ordinances, and is therefore admissible. The real issue in this case, however, is whether the Puyallup City Council intended to impose a tax on revenues for 1979 and 1980 *and* whether it effectively did so in its ordinances. The opinion letter of outside counsel to his or her client can hardly be said to reflect the City Council's legislative intent, especially when the intent was so clearly expressed by ordinance. These letters also fail to meet the rather specific requirements of RAP 9.11(a), since the case can easily be decided without such evidence. Therefore, we deny the motion to allow additional evidence on review.

 To properly resolve the issues now before us, we must construe the Puyallup city ordinances so as to determine the legislative intent of those provisions. *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972); *Williams v. Pierce Cy.,* 13 Wn. App. 755, 537 P.2d 856 (1975). The same rules of construction apply to interpretations of municipal ordinances as to interpretations of state statutes. *Seattle v. Green,* 51 Wn.2d 871, 322 P.2d 842 (1958). To the extent possible, all provisions should be harmonized so that no words or phrases are rendered superfluous or meaningless. *Emwright v. King Cy.,* 96 Wn.2d 538, 543, 637 P.2d 656 (1981); *Pearce v. G.R. Kirk Co.,* 92 Wn.2d 869, 872, 602 P.2d 357 (1979). If any doubt exists as to the meaning of a taxing statute or ordinance, it must be construed most strongly against the taxing authority and in favor of the taxpayer. *See, e.g., Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 587 P.2d 535 (1978); *Department of*

*Rev. v. Hoppe*, 82 Wn.2d 549, 512 P.2d 1094 (1973); *Dravo Corp. v. Tacoma*, 80 Wn.2d 590, 496 P.2d 504 (1972).

The ordinances now at issue were first established by ordinance 1780. The title of that ordinance reads as follows:

> AN ORDINANCE amending Sections 5.08.030 and 5.08.050 of Chapter 5.08 of Title 5 of the Puyallup Municipal Code, the said amendments pertaining to *a raise in the utility tax from six (6) to eight (8) percent and changing the dates for payment thereof.*

(Italics ours.) Clerk's Papers, at 110. Section 5.08.030 contains several subsections applying the new tax rate to various businesses within the city of Puyallup. Section 5.08.030(2) applies to PNB, and section 5.08.030(3) applies to WNG. Each of those sections levies the new tax rate "[f]rom and after January 1, 1980," and imposes "an annual tax for the privilege" of carrying on certain businesses within the city of Puyallup. Clerk's Papers, at 121. The provision establishing the due dates for such taxes and the new accelerated collection provisions are contained in section 5.08.050 of the Puyallup Municipal Code, and reads in pertinent part:

> *5.08.050 Due Date. The tax imposed by Section 5.08.030 which will become due and payable on January 1, 1980 for the six month period January through June, 1979 shall be payable on the said 1st day of January, 1980 at the rate of eight (8) per cent. The tax imposed by Section 5.08.030 for the six month period of July 1 through December 31, 1979 shall become due and payable on March 31, 1980 at the rate of eight (8) per cent.* The tax imposed by Section 5.08.030 for the year 1980 and for subsequent years shall be due and payable bi-monthly, as follows: On March 31st of each year for the months of January and February; on May 31st of each year for the months of March and April; on July 31st of each year for the months of May and June; on September 30th of each year for the months of July and August; on November 30th of each year for the months of September and October and on January 31st of the subsequent year for the months of November and December.

(Italics ours.) Clerk's Papers, at 110. Appellants contend

the above italicized language in section 5.08.050 is ambiguous and inconsistent with the language of sections 5.08-.030(2) and (3) which apply the tax "from and after January 1, 1980." We agree.

■ First, the language of section 5.08.050 referring to the taxes imposed by section 5.08.030 for 1979 is ambiguous since section 5.08.030 purports to apply the new tax rate only from *January 1, 1980*. The language of section 5.08-.030 clearly indicates a prospective application of the 8 percent tax and fails to express any intent to apply retroactively to 1979. A legislative enactment is presumed to apply prospectively only, and will not be held to apply retrospectively unless such legislative intent is clearly expressed. *Amburn v. Daly, supra* at 246; *Anderson v. Seattle,* 78 Wn.2d 201, 202, 471 P.2d 87 (1970). Any inconsistency between sections 5.08.030 and 5.08.050 as to the application of the new tax rate must be resolved in favor of the clearer expression of legislative intent in section 5.08-.030.

■ Second, the interpretation of the ordinances by respondent extends beyond the stated legislative purposes of the enactments. In section 2 of ordinance 1795, the Puyallup City Council set out three clear purposes of the newly amended sections: (1) to continue levying the annual B & O taxes without interruption; (2) to change the rate of those taxes from 6 percent to 8 percent of gross subscribers' revenues; and (3) to change the time for collection of those taxes. Respondent argues that its interpretation of the ordinances, *i.e.,* that the 1980 tax should be measured by 1979 *and* 1980 revenues, is necessary to prevent all 1979 revenues from escaping any measure of tax. That result, respondent contends, would be unreasonable and illogical.

■ Certainly, any statutory interpretation which would render an unreasonable and illogical consequence should be avoided. *Scannell v. Seattle,* 29 Wn. App. 175, 178, 627 P.2d 1000 (1981). Respondent's belief of unreasonableness comes, however, from its mistaken interpretation of the nature of B & O taxes. Respondent apparently equates its

B & O tax with an income tax. Instead, B & O taxes are for the privilege of engaging in business during a certain time frame, measured by applying a rate of tax to some tax base.

Prior to the amendments at issue here, respondent chose as its tax base the gross subscribers' revenues from the previous year. Thus, for the privilege of engaging in business in 1970, a tax was assessed during 1970 based on a percentage of 1969 revenues. The 1969 revenues were not directly taxed under the old system. Respondent could have chosen any tax base (*e.g.,* value of total holdings within city limits, total payroll payments, etc.), and simply chose the preceding tax year's gross revenues. By choosing to accelerate the due dates for 1980 taxes, respondent merely chose a different tax base: bimonthly gross subscribers' revenues during the same year. Respondent is mistaken in believing it is directly taxing revenues for each year. No taxes will be missed by failing to apply an 8 percent tax to 1979 *and* 1980 revenues as can be illustrated by the following chart of PNB's tax experience in the city of Puyallup:

| Tax Year | Tax Paid | Measured by Revenues for the Year |
|---|---|---|
| 1958 | $6,542.32 | 1957 |
| 1959 | 6,695.05 | 1958 |
| 1960 | 7,056.38 | 1959 |
| 1961 | 7,524.47 | 1960 |
| 1962 | 9,171.62 | 1961 |
| 1963 | 10,657.98 | 1962 |
| 1964 | 11,376.39 | 1963 |
| 1965 | 11,912.96 | 1964 |
| 1966 | 12,641.48 | 1965 |
| 1967 | 13,463.33 | 1966 |
| 1968 | 14,310.81 | 1967 |
| 1969 | 20,597.17 | 1968 |
| 1970 | 21,816.01 | 1969 |
| 1971 | 24,311.07 | 1970 |
| 1972 | 25,051.50 | 1971 |
| 1973 | 28,012.35 | 1972 |

| 1974 | 47,079.40 | 1973 |
| 1975 | 50,290.67 | 1974 |
| 1976 | 53,330.04 | 1975 |
| 1977 | 57,337.76 | 1976 |
| 1978 | 61,250.28 | 1977 |
| 1979 | 69,909.90 | 1978 |

Clerk's Papers, at 137. If the B & O tax provisions were interpreted to provide only for an 8 percent tax on 1980 revenues, payable bimonthly, for the privilege of doing business in 1980, the tax would amount to an estimated $114,373, according to PNB's calculations. That amount would be a significant increase over 1979 tax revenues, and would seem to follow from the progression shown in the above chart. Under respondent's interpretation, however, the 8 percent tax would also be applied to 1979 revenues resulting in an additional $98,610.36 in taxes—a total tax payment of approximately $212,983.36 would result. The additional tax revenues arising from a retroactive application of the 8 percent B & O tax would clearly result in a one–time windfall for respondent. If the Puyallup City Council intended to reach 1979 and 1980 revenues to expand its tax base for 1 tax year, it did not express that intent in the ordinances before us.

As stated previously, we must construe taxing measures most strongly against the taxing authority and in favor of the taxpayer. *See Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 587 P.2d 535 (1978). Since the Puyallup City Council did not clearly indicate its intent to include both 1979 revenues and 1980 revenues in calculating the 1980 B & O tax, and since the application of the 8 percent tax only to 1980 revenues is entirely consistent with the City Council's stated intent to merely raise the tax rate and accelerate collection of the taxes, we reverse the trial court.

This cause is remanded to the trial court with instructions to vacate the entry of summary judgment in favor of the respondent for back taxes and penalties. The trial court is further instructed to enter summary judgment in favor of

appellants for recovery of taxes paid under protest. Reversed and remanded with instructions.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, DIMMICK, and PEARSON, JJ., concur.

DORE, J. (dissenting)—The trial court ruled that the increased 1980 business and occupation tax (B & O tax) against Pacific Northwest Bell Telephone Company (PNB) and Washington Natural Gas Company (WNG) had been constitutionally assessed. The majority now reverses the trial court's decision, holding that provisions of the 1980 tax ordinance were ambiguous and were retroactively applied to 1979 revenues. The majority holds that such B & O taxes can be applied only to 1980 revenues, and that the City of Puyallup is prohibited from taxing any company revenues for the 1979 calendar year.

I believe the subject ordinance is neither ambiguous nor retroactive, and that it is error to give PNB and WNG an unauthorized windfall by prohibiting the taxing of 1979 revenues. For the reasons stated below, I would affirm the trial court.

I
THE LANGUAGE OF THE ORDINANCE
IS NOT AMBIGUOUS

Under sections 5.08.030 and 5.08.050 of the Puyallup Municipal Code, the collection dates for taxes measured by revenues generated during 1980 and subsequent years were accelerated. The revenue periods were broken into 2–month (instead of the previous 6–month) segments. The taxes measured by revenues generated during each segment or period became due at the end of the month immediately following the revenue period. As a result of the acceleration of the collection schedule under the amendments to sections 5.08.030 and 5.08.050 of the Puyallup Municipal Code, the *measure* of the tax imposed on the privilege of engaging in the utility business in the city in 1980 includes revenues from both 1979 and the first 10 months of 1980.

Chapter 5.08 of the Puyallup Municipal Code is a result of the exercise of that municipality's legislative power. It is, therefore, presumed valid. The burden is on PNB and WNG to rebut this presumption and to show the legislative action taken was invalid. *O'Connell v. Conte,* 76 Wn.2d 280, 283, 456 P.2d 317 (1969); *Henry v. Oakville,* 30 Wn. App. 240, 247, 633 P.2d 892 (1981).

The same rules of statutory construction apply to the interpretation of municipal ordinances as apply to the interpretation of state statutes. *See Seattle v. Green,* 51 Wn.2d 871, 874, 322 P.2d 842 (1958). The primary objective of statutory construction is to determine the intent of the legislative body. "The guiding rule and our major goal in an inquiry of this sort is to seek out, ascertain and give effect to the [legislative] intentions . . ." *Krystad v. Lau,* 65 Wn.2d 827, 844, 400 P.2d 72 (1965). *See also Amburn v. Daly,* 81 Wn.2d 241, 245, 501 P.2d 178 (1972); *State v. Douty,* 20 Wn. App. 608, 614, 581 P.2d 1074 (1978).

To determine the legislative intent, recourse should first be had to the language of the legislation itself. The following canons of construction, among others, are applicable:

> (2) the words of the statute must be understood in their usual and ordinary sense in the absence of statutory definition; (3) they must be read in context; (4) they must be construed to make the statute purposeful and meaningful; (5) they must be construed to give effect to all the language used; (6) they must be construed to give effect to each word if possible; (7) they must be construed so that each part is given effect with every other part or section; and (8) the words should not be read in isolation.

(Citations omitted.) *In re Kent,* 1 Wn. App. 737, 739–40, 463 P.2d 661 (1969).

PNB and WNG are in agreement with the City that subsections 5.08.030 and 5.08.050 create an annual tax at 8 percent of revenue from and after January 1, 1980, for the privilege of doing business in the city in a given year. PNB and WNG concede that this portion of the tax code is clear,

and that it first establishes the 8 percent tax in 1980.

The difficulties as perceived by WNG and PNB arise from section 5.08.050, which accelerated collection of the tax.

*5.08.050 Due Date. The tax imposed by Section 5.08.030 which will become due and payable on January 1, 1980 for the six month period January through June, 1979 shall be payable on the said 1st day of January, 1980 at the rate of eight (8) per cent. The tax imposed by Section 5.08.030 for the six month period of July 1 through December 31, 1979 shall become due and payable on March 31, 1980 at the rate of eight (8) per cent. The tax imposed by Section 5.08.030 for the year 1980 and for subsequent years shall be due and payable bi–monthly, as follows: . . .* As used in this chapter, "due date" of a tax and the date a tax becomes "due" shall be the date on which the tax becomes due and payable as specified above. On or before the due date, the taxpayer shall file with the City Clerk a written return upon such form and setting forth such information as the clerk shall reasonably require, together with the payment of the amount of the tax due.

(Italics mine.) Clerk's Papers, at 110.

Section 5.08.030 establishes a B & O tax for the years 1980 and onward. Section 5.08.050 specifically refers to and incorporates section 5.08.030, then establishes the due dates for the B & O tax in 1980 and subsequent years. For the taxable year 1980, the revenues from *1979* are used to measure the tax, as in previous years. In addition, revenues generated in 1980, which under the old collection scheme would be used to measure the tax in *1981,* also become part of the revenue base for measuring the tax due in *1980.* In succeeding years, the B & O tax will be measured by 10 months' revenue during the taxable year, together with the last 2 months' revenue of the preceding year. The inevitable effect of adopting the new due dates is to accelerate or "bunch" collection during the first year under the new system.

## II
## THE TRANSITIONAL PROVISIONS OF THE UTILITY TAX
## CODE DO NOT OPERATE RETROACTIVELY

The majority reads section 5.08.*050* to refer to the B & O tax for 1979. The majority then holds that the language of the code is not sufficient to impose such a tax and that, in any event, such a tax would be impermissible as retroactive. It concludes, therefore, that the offending provision of this section must be stricken or ignored. When read together, however, sections 5.08.030 and 5.08.050 are not inconsistent with regard to 1979. The former section imposes an 8 percent tax and the latter establishes the collection dates for that tax measured by all of the utilities' 1979 revenues and 10 months of their 1980 revenues. No retroactive tax is created.

The mere fact that the tax relates, in part, to the year 1979 does not make it retroactive.

> A statute is not retroactive merely because it relates to prior facts or transactions where it does not change their legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage or because it fixes the status of a person for the purposes of its operation.

*State v. Scheffel,* 82 Wn.2d 872, 879, 514 P.2d 1052 (1973). *See also Bates v. McLeod,* 11 Wn.2d 648, 654, 120 P.2d 472 (1941); *Lewis v. Medina,* 13 Wn. App. 501, 505, 535 P.2d 150 (1975). The tax is not retroactive.

## III
## THE ORDINANCE DOES NOT RESULT IN
## DOUBLE TAXATION

The majority in its opinion at pages 451–52 sets forth PNB's table illustrating how PNB paid its Puyallup utility taxes, measured on gross revenues, from 1958 through 1979:

| Tax Year | Tax Paid | Measured by Revenues for the Year |
|----------|----------|-----------------------------------|
| 1958 | $6,542.32 | 1957 |
| 1959 | 6,695.05 | 1958 |

| 1960 | 7,056.38 | 1959 |
| 1961 | 7,524.47 | 1960 |
| 1962 | 9,171.62 | 1961 |
| 1963 | 10,657.98 | 1962 |
| 1964 | 11,376.39 | 1963 |
| 1965 | 11,912.96 | 1964 |
| 1966 | 12,641.48 | 1965 |
| 1967 | 13,463.33 | 1966 |
| 1968 | 14,310.81 | 1967 |
| 1969 | 20,597.17 | 1968 |
| 1970 | 21,816.01 | 1969 |
| 1971 | 24,311.07 | 1970 |
| 1972 | 25,051.50 | 1971 |
| 1973 | 28,012.35 | 1972 |
| 1974 | 47,079.40 | 1973 |
| 1975 | 50,290.67 | 1974 |
| 1976 | 53,330.04 | 1975 |
| 1977 | 57,337.76 | 1976 |
| 1978 | 61,250.28 | 1977 |
| 1979 | 69,909.90 | 1978 |

PNB and WNG argue that if the code were read to impose another 1979 tax, the following payments would be added to the columns in the above table:

| 1979 | $98,610.36 | 1979 |
| 1980 | 114,373.00 (est.) | 1980 (bimonthly revenues) |

The appellants contend this would result in a double tax for the year 1979, which would be retroactively applied. In agreeing with this reasoning, the majority has incorrectly analyzed the above table.

Appellants' double listing of the year 1979 is inaccurate. Under the code, an accurate table would read:

| 1980 | $98,610.36 | Tax on 1979 revenues |

| | | |
|---|---|---|
| 1980 | 114,373.00 (est.) | Tax on 1980 (bimonthly revenues for 10 months) |

Consequently, the doubling of tax dollars in 1980 is a result of actually collecting the taxes on 1979 revenues and 10 months of 1980 revenues in the same year (1980).

All of the taxes paid by PNB in 1979 were based entirely on *1978* revenues. PNB paid no taxes on 1979 revenues in 1979 for they didn't become due until January 1, 1980. In addition, the B & O tax on 10 months of PNB's 1980 revenues became due in 1980 rather than on January 1, 1981. This is not double taxation.

## IV

### THE MAJORITY'S CONSTRUCTION OF THE CODE RESULTS IN NO B & O TAXATION IN 1979

The majority holding is a windfall for PNB and WNG for it prohibits any taxation of these companies on their 1979 revenues. This is an unreasonable and illogical consequence. *See Krystad v. Lau, supra; Scannell v. Seattle,* 29 Wn. App. 175, 627 P.2d 1000 (1981); *Williams v. Pierce Cy.,* 13 Wn. App. 755, 537 P.2d 856 (1975).

The "bunching" of *revenues* in 1980 as the measure of tax was an expected and intended consequence of accelerating the collection schedule. There was never an intent to forego a tax measured by the full year's revenues of 1979. The Washington State Legislature for many years has increased revenues by shortening collection periods.[1] This

---

[1]This pending interpretation of the Puyallup ordinance is analogous to the lagged payroll system case which was recently argued before the Washington State Supreme Court. *See* Administrative Order 54, approved and adopted by the Washington State Office of Financial Management on August 30, 1982, State Register 82.18.049 (1982). The mechanics of that order provide that the pay for state employees will be deferred from the last day of the month to the 10th day of the following month, which gives the State a gain of $4 million additional interest. The same principle is involved in this case where the City of Puyallup, instead of deferring collection of the B & O tax 6 months after the taxable year, reduces the 6-month lag to 3 months for the last 6 months of 1979 revenues, and from 6 months to 2 months for 1980 revenues. This, in effect, doubles the revenues of the

is all the City of Puyallup was endeavoring to do with its ordinance. Previously, the tax period for the application of interest in the due period was 6 months behind. The amendment, in effect, merely provides that the collection period is shortened from 6 months to 2 months.

## CONCLUSION

The indicia of intent found in the legislation passed by the Puyallup City Council, analyzed in the context of legislative construction, leaves but one conclusion: The City imposed on PNB and WNG an 8 percent tax for the privilege of engaging in the utility business in the city of Puyallup in 1980 measured by their 1979 revenues and the first 10 months of their 1980 revenues. There will be no tax applied *twice* on the same revenues. 1979 revenues will be taxed only once and 1980 revenues will be taxed only once. The majority, at pages 451–52, is incorrect in concluding:

> No taxes will be missed by failing to apply an 8 percent tax to 1979 *and* 1980 revenues . . . The additional tax revenues arising from a retroactive application of the 8 percent B & O tax would clearly result in a one–time windfall for respondent.

There is no retroactivity in the Puyallup ordinance. There is nothing ambiguous or inconsistent in the two sections. The majority, in its failure to harmonize the two sections, gives a windfall to the two corporations for the 1979 calendar year. As a result, they will not pay *any* B & O tax on 1979 revenues. It is true the City of Puyallup will receive approximately the same amount of tax dollars during 1980 but it will be on 1980 revenues only and they will never, at any time, be able to collect B & O taxes on 1979 revenues.

The waiver of B & O taxes on 1979 revenues is unjustified and incorrect. I would affirm the trial court, both in the dollar amount of B & O taxes assessed against PNB and WNG under protest and penalties.

---

B & O taxes in 1980, but there is no retroactivity involved because each is assessed against revenues of a time period that is already past.