[No. 255-3.  Division Three.  April 28, 1971.]

JOHN SONNELAND et al., *Respondents,* v. THE CITY OF SPO-KANE et al., *Appellants.*

*Norman de Pender, F. G. Fancher,* and *John J. Madden,* for appellant City of Spokane.

*James Healy, Jr.* (of *Healy & Godderis*), for appellant Habco, Inc.

*Fred W. Gilbert* (of *Hamblen, Gilbert & Brooke*), for respondents.

MUNSON, C.J.—This is an appeal from a judgment of the superior court voiding the action of the Spokane Plan Commission and the Spokane City Council granting a rezoning classification from R1, 1-family residence, to R3-L, multi-family residence limited. The trial court found: (1) the change constituted spot zoning, and (2) the ordinance adopting the change failed to establish proper guidelines for review of the development plans for the rezoned area by the plan commission. We disagree.

The facts essential to the resolution of this appeal are summarized as follows:

On January 21, 1970 the Spokane Plan Commission held a hearing on the application of Habco, Inc., a corporate combination of real estate developers, to discuss the feasibility of changing a 660-foot-square area abutting 29th Avenue from a zone classification of R1 to one of R3. This particular area has always been classified as R1 and remains in its natural state with several huge outcroppings of lava rock, some solid stands of pine, numerous grassy open slopes, wild flowers and flowering shrubs. The proposed zone change did not include the entire natural area but only that portion bounded by 29th and 31st Avenues, Crestline and Pittsburg Streets. Testimony was presented by both proponents and opponents of the proposed zone change. Habco, Inc. proposed to develop this area by constructing numerous garden apartments.

The matter was continued by the plan commission until February 4, 1970 when it was again brought forth for discussion. At the conclusion of all testimony and after discussion among the members, the plan commission recommended the proposed change but not to the full extent requested by Habco, Inc., *i.e.*, it recommended a change to R3-L, the "L" being indicative of further restrictions on the R3 classification as set forth in section 210.15 *et seq.* of The Comprehensive Zoning Ordinance of the City of Spokane. Habco, Inc. accepted this recommendation requesting it be forwarded to the city council without preparation of detailed plans for the project. On February 18, 1970 the plan commission acquiesced in this request and forwarded its recommendation to the city council.

An extensive hearing was held before the council on March 16, 1970. Both proponents and opponents presented their views. At the conclusion thereof, the council unanimously accepted the recommendation of the plan commission and subsequently adopted an ordinance changing the zone classification from R1 to R3-L, subject to the following conditions:

1. Plans therefor shall be submitted to and approved by the Commission before any building permit is issued, and all construction shall be consistent with said plans.
2. The development is to be of the upper middle and higher cost range.
3. The sewers shall be worked out satisfactory to the City Engineer and may involve some readjustments at the petitioner's expense.

Respondents brought the matter before the trial court on a writ of certiorari. The court, after hearing argument of counsel, viewing the premises, examining the record made before the plan commission and the city council and allegedly accepting other evidence, held the ordinance to be void. The trial court made extensive findings of fact and conclusions of law and entered judgment in accordance with its oral opinion. From this decision the City of Spokane and Habco, Inc. appeal setting forth 24 assignments of error. Rather than consider each assignment of error separately, we have grouped the meritorious ones for discussion in this opinion.

■ The first assignment of error alleges the trial court erred in receiving evidence outside the written record of the proceedings before the city council, including the proceedings before the plan commission, and in viewing the site of the proposed zone change. As to the first contention, when zoning authorities hold a hearing, consider changed conditions in relation to the zoning ordinance, and make a legislative determination that rezoning is necessary, a court, in reviewing on writ of certiorari the legislative action taken, acts in an appellate capacity. Therefore, its attention is limited to the proceedings before the zoning authorities. *Bishop v. Houghton,* 69 Wn.2d 786, 420 P.2d 368 (1966). However, the error, if any, in the instant case was not prejudicial error.

As for the contention the trial court erred in viewing the premises, we disagree. It is evident the court utilized the view with the purpose of better understanding the evidence

properly before it. *Carlson v. Bellevue,* 73 Wn.2d 41, 435 P.2d 957 (1968).

Appellants next assign error to the trial court's finding that by rezoning the instant property the city council was guilty of spot zoning. This conclusion was based upon several findings of fact, summarized in the footnote.[1]

■ As observed in *Smith v. Skagit County,* 75 Wn.2d 715, 743-44, 453 P.2d 832 (1969):

Spot zoning has come to mean arbitrary and unreasonable zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from and inconsistent with the classification of surrounding land, and not in accordance with the comprehensive plan. Spot zoning is a zoning for private gain designed to favor or benefit a particular individual or group and not the welfare of the community as a whole. *See* C. Rhyne, *Municipal Law* § 32-3, at 825 (1957). The vice of a spot zone is its inevitable effect of granting a discriminatory benefit to one or a group of owners and to the detriment of their neighbors or the community without adequate public advantage or justification. *Thomas v. Town of Bedford,* 11 N.Y.2d 428, 184 N.E.2d 285 (1962). Zoning merely for the benefit of one or a few, or for the disadvantage of some and with no substantial relationship to the public health, safety,

[1](a) Land Use Plan of the City of Spokane states that apartments might be built "along 29th" and this does not mean 30th or 31st Avenues.

(b) Nothing in the record shows the Habco development considered the welfare of the community as a whole, nor that a public benefit was established.

(c) The world "gain" as contained in the definition of spot zoning was particularly applicable to this case inasmuch as there was a $1 million benefit to Habco, Inc. in terms of profit anticipated from this project.

(d) There was no testimony supportive of a "justification" as contained within the definition of spot zoning to indicate there had been any change in the general plan or outlook of the community since the adoption of the Land Use Plan.

(e) No testimony with reference to the public, health, safety, general welfare and morals is supported in the record.

(f) The area had always been designated low density single-family residence and the change in classification amounts to a discriminating benefit to the owners without benefit to the neighbors or any public advantage or justification.

general welfare or morals, in conflict with either the comprehensive zoning plan or ordinance is arbitrary and capricious and unlawful. *Eckes v. Board of Zoning Appeals of Baltimore Cy.*, 209 Md. 432, 121 A.2d 249 (1956).

In an effort to update a 1961 generalized preliminary land use plan, a technical committee on land use was appointed. It was comprised of 17 citizens experienced in real estate, development, construction, design, finance and engineering. The report of this committee culminated in the adoption of a comprehensive land use plan by the Spokane City Council in May 1968. The plan states it is to be considered

> as a guide for both public actions and private development in using land and in promoting improved living conditions, bettering facilities to do business, and generally furthering growth along comprehensive plans.

The trial court quoted extensively in its findings from various portions of this plan; however, the plan commission had not disregarded this document and gave it serious consideration during its deliberations upon the proposed change. In particular, it was pointed out during the hearings before the plan commission that the plan contained the following language:

> "The noticeable demand and trend is toward medium and higher quality apartments in good residential environment and near employment, social or business centers. The older, close-in apartment areas do not provide the quality of environment sought by the builder and tenant of the better apartments. Perhaps by redevelopment the close-in areas could provide the quality environment at focal points, but generally speaking the demand will not be for larger areas zoned for apartments, but rather will be for small clusters of apartments scattered at view sites or other key locations intermingled with single-family residential areas.

> "We recognize the traditional sentiment against apartments in single-family areas. We suggest that in the past there has been reason for this concern. However, newer concepts of apartment construction are compatible with single family homes. We find it is how the apartment is developed that makes the difference. Where there is low

ground coverage, setbacks, spacious landscape, and quality construction comparable to the surrounding area, the apartment can be a congenial part of most any residential neighborhood."

. . .

*South Hill.* "On the south hill we can conceive of apartments at view sites . . . These and similar areas throughout the City should be given detailed studies to best apply the foregoing principles to the actual zoning and development of the ground.

"The primary principle we wish to stress is to maintain a quality development commensurate with its surroundings with considerable setback and open space varying according to the height and bulk of the building and in a good residential environment near focal points or view and with good access. This will probably require a form of special permit and review of plans to achieve quality control and locations among single-family residential areas."

In summary, it is expected that single-family homes will continue to be the predominant residential use in Spokane but that there will also be a continuing substantial construction of new duplexes and apartments, much of it at outlying locations.

In commenting on this portion of the land use plan, a member of the plan commission stated:

[T]hat open area which this application is a part of is probably getting closer to the time of development than the stipulation in the report of the . . . type of development that requires the Plan Commission's review with all the characteristics that is suggested there in open space, of lesser densities than what might normally be expected, and particularly the visual characteristic that would not be jarring as going from single-family residence to Multi-Family Residence, which is certainly capable of in our condominium concept and garden apartment concepts, . . .

. . .

. . . but the condition of rock and the necessary excavation for utilities and that sort of thing does put a premium price on single-family development, and therefore I think that you could well expect to get a higher quality multi-family residential development than you could if we continued to insist on single family.

The commission adopted the recommendation of the zoning change and further recommended the R3 designation be limited so as to require conditions such as a lower population density than a normal R3 designation, *e.g.*, a density of 3,000 square feet per unit as contrasted to 2,000 square feet per unit.

In order to disturb the action of the city council it must be found they acted in an arbitrary and capricious manner. Arbitrary and capricious action has been defined as

> being willful and unreasoning action, without consideration and in disregard of facts or circumstances . . . where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration, even though it may be otherwise felt that a different conclusion might be reached.

*Bishop v. Houghton, supra,* at 794. In light of this definition and our own review of the record presented to the trial court, we do not find the ordinance as enacted was spot zoning. The concept of a change from a single-family dwelling to that of a multi-family dwelling is not "totally different from and inconsistent with the classification of the surrounding land". Likewise, while no developer could be considered to undertake such a project without anticipating profit, we do not interpret the world "gain" as contained in the definition of spot zoning to be so restricted as to mean only profit. Neither the concept of change nor gain proposed by this development is as drastic as that proposed in *Smith v. Skagit County, supra,* or *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971). Nor do we find the action of the plan commission or city council to have been arbitrary, capricious or unreasonable. Ample time was given for discussion by both proponents and opponents and the merits of each were weighed by the members of the commission and council in relation to the city's comprehensive land use plan. Neither has there been any element of unfairness exhibited as there was in *Smith* or *Chrobuck.* While the magic words of public need, community welfare, public health, safety and morals are not referred to with

any degree of specificity, we find all of these matters were given consideration by both the commission and the council. *McNaughton v. Boeing*, 68 Wn.2d 659, 663-64, 414 P.2d 778 (1966). Furthermore, there is room for differing opinions, honestly exercised, and after due consideration we do not believe the council's action was contrary to the law. *Chestnut Hill Co. v. Snohomish*, 76 Wn.2d 741, 458 P.2d 891 (1969); *Farrell v. Seattle*, 75 Wn.2d 540, 452 P.2d 965 (1969); *State ex rel. Myhre v. Spokane*, 70 Wn.2d 207, 210, 422 P.2d 790 (1967); *cf.* 8 McQuillin, Municipal Corporations § 25.67 at 173 (3d ed. 1965).

■ The last assignment of error relates to the court's finding there was an unlawful delegation of authority by the city council to the plan commission in allowing it to approve the plans of Habco, Inc. without specifying any guidelines. Appellants cite our opinion in *State ex rel. Ryder v. Pasco*, 3 Wn. App. 928, 931-32, 478 P.2d 262 (1970) as authority for their challenge to the trial court's finding:

> While it is generally held that a delegation of discretionary power to an administrative authority must be accompanied by guidelines for the exercise thereof, it is not necessary that the standards be denominated as such, nor minutely detailed. [Citing cases.] The complexity of modern governmental activity does not always lend itself to a narrow categorization of problems handled by the administrative body nor the method to be employed in their solution.

That case involved the city council itself acting in two different capacities, *i.e.*, legislative and administrative. The instant case involves a distinction between the legislative authority of the council and the administrative duties of the plan commission. However, by definition the R3-L zoning classification had restrictions thereon within the scope of the comprehensive plan of the city of Spokane and in accordance with the land use sections considered by the plan commission. The principle stated in *Ryder* is applicable here; the city council set forth adequate guidelines

within a specific sphere of reference to Habco's development. We do not find an unlawful delegation of authority.

Judgment reversed.

GREEN and EVANS, JJ., concur.

Petition for rehearing denied June 7, 1971.

Review denied by Supreme Court July 1, 1971.