[No. 3188-42999-1.    Division One.    September 2, 1975.]

TONY COLELLA, *Respondent*, v. KING COUNTY, *Appellant.*

FARRIS, J., dissents by separate opinion.

*Christopher T. Bayley, Prosecuting Attorney*, and *John E. Keegan, Deputy*, for appellant.

*Michael R. Donovan,* for respondent.

WEAVER, J.*—King County and certain intervenors appeal from a judgment declaring the refusal of the King County Council to rezone respondent's property from SR (suburban residential) to ML (light manufacturing) was arbitrary, capricious, and unreasonable. On identical grounds, the judgment invalidated a King County abatement order consolidated by the Superior Court with the zoning appeal.

Respondent Tony Colella owns a 14.10-acre tract of land bound on the north by limited-access freeway, State Highway 518, and on its west side by 12th Avenue South. West of 12th Avenue South and south of the Colella property are residential subdivisions upon which there are single family residential homes.

Seattle-Tacoma Airport, owned by the Port of Seattle, abuts Mr. Colella's property on the east. The trial court found that the adjoining airport

> is used for various uses such as terminal, storage areas, commercial activities and other related activities.

Finding of fact No. 15, in part. The only access to Mr. Colella's property is by way of South 150th Street extending one block of approximately 400 feet in a westerly direction from 12th Avenue South through a residential area to Des Moines Way.

December 11, 1967, the Colella property was zoned SR (suburban residential) by an area rezoning proceeding. No error is assigned to the trial court's finding that

> the subject property lies immediately adjacent and borders on the Seattle-Tacoma Airport and is located in zone 3 which zone classification has been made by the FAA [Federal Aviation Administration] as having the highest noise intensity from aircraft taking off and landing at Seattle-Tacoma Airport.

Finding of fact No. 5, in part.

---

*Justice Frank P. Weaver is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

The residences to the west and south of Mr. Colella's property are also in zone 3 and the record discloses that the Federal Housing Administration will not insure mortgage loans for new construction on the property because of airport noise.

In 1970, Mr. Colella filed the first of three applications with King County to rezone his property from SR to ML. Each of the applications was denied after a public hearing before a hearing examiner and a subsequent adoption of the examiner's recommendation by the King County Council. September 1, 1972, Mr. Colella applied to the King County Superior Court for a writ of certiorari requesting that the controversy be reviewed by the court.

Pursuant to the writ, the county certified all of the records of the zoning proceedings, including a verbatim transcript of all of the proceedings, to the court for review. Included in the record were the following conclusions and recommendations of the hearing examiner:

It is unlikely that the subject property will be developed with the single family residential use for which it is zoned because of the high noise levels generated by the aircraft traffic at Seattle-Tacoma Airport.
RECOMMENDATION:
1. Deny the application.
2. Advise the Environmental Development Commission that the Council supports the Department of Planning request for an area zoning study of the area surrounding the Seattle-Tacoma Airport.

It is apparent from the record that the ever-rising tide of time has resulted in inexorable, inflexible, and inevitable changes in the neighborhood since it was zoned as suburban residential. The intervenors and those residents of the area appearing in the public hearings expressed the desire and hope that the Port would purchase or condemn their properties.

The scene changes. During the time the applications for rezoning were heard, the residents to the west and south of the Colella property complained to the King County Build-

ing Division that Mr. Colella was illegally conducting a gravel pit and topsoil manufacturing and stockpiling operation on his property in violation of the county zoning ordinance. They requested the county halt and abate the operation.

After investigation and hearing, the building division determined that Mr. Colella was violating the ordinance. October 19, 1972, it entered an order abating the illegal use. Upon appeal, the King County Board of Appeals entered an order abating Mr. Colella's described use of the property. In January 1973, the abatement order was appealed to the Superior Court.

The two cases involving the Colella property—rezoning and the abatement proceeding—proceeded independent of each other in the Superior Court. The county was represented in each case by different counsel.

Pending the zoning proceedings, it was believed that the Port of Seattle was about to acquire the Colella property by eminent domain, so counsel for the county agreed that an order, dated February 20, 1973, be entered permitting Mr. Colella to continue to use his property as he had in the past, subject to certain conditions, provided he would not exceed a daily average of 20 trucks per day in and out of his property by way of South 150th Street. The court retained jurisdiction.

At the time this order was entered, the court and counsel for the county were unaware that the abatement order had been entered and appealed to the Superior Court by Mr. Colella. Upon learning of the conflict between the order of February 20, 1973, and the order of abatement, the cases were consolidated for trial.

The consolidated cases having been tried, the court at first orally announced its decision upholding denial of the application for rezoning and permitting the abatement order to stand. Shortly thereafter, however, upon respondent's motion for reconsideration, the court entered judgment from which this appeal is prosecuted. The judgment

determined the refusal to rezone Mr. Colella's property to be arbitrary, capricious, and unreasonable, and that the abatement order was invalid.

King County and the intervenors make 11 assignments of error; 8 to findings of fact; 2 to conclusions of law; and 1 to the judgment.

Two primary issues are raised by the assignments of error expressed by appellants. The first:

In reviewing the record of a municipality involving the zoning matter can the trial court go outside of the record and consider facts not in the record in rendering its decision?

The second:

Was the action of the King County Council in refusing to rezone the Colella properties from SR (suburban residential) to ML (light manufacturing) arbitrary, capricious, and unreasonable?

There are three answers to appellant's contention that the trial court went outside the record.

■ *First*: If there be error in this repsect, it was error invited by appellants.

The hearing before the Superior Court had scarcely commenced before counsel for King County, now appellant, submitted three exhibits which *had not been before the hearing examiner or county council*. The nature and contents of the exhibits are immaterial to this opinion.

Counsel stated:

In order to give the Court a complete history of what's been done, this is necessary, and it's official part of the county's record, and I think we're entitled to have this admitted as a matter of right, and are [*sic*] part of records of King County.

. . . but certainly it is something that the Court ought to have before it, and the record would be incomplete without it.

Counsel for Mr. Colella objected upon the usual grounds that

it would be wrong to bring in any additional information because the Court has to review and make this its deci-

sion based upon what was before the Hearing Examiner and before the County Council, not something that subsequently has occurred.

At all stages of the proceeding, the trial judge knew precisely the rules of law that were to govern his decision. He admitted the proffered exhibits in evidence, however, with distinct qualifications. He stated:

> Let's go to No. 1 first. I'll admit No. 1 for the, just the sole purpose of edifying the Court and aiding the Court, but *not as a part of the official record that pertains to the writ of certiorari.*

(Italics ours.)

Upon the same theory, the county produced an employee of the Port of Seattle as a witness who described certain land acquisition practices of the Port.

Appellant cannot induce and invite error and then urge it as a reason for reversal.

■ *Second:* If there be error in the record of the Superior Court because the findings of fact contain certain matters, as pointed out in appellant's brief, not within the scope of the various proceedings before the hearing examiner and the King County Council, it is either "harmless error" or generalities of which the court can take judicial notice.

One cannot read the many judicial opinions of appellate courts treating with problems of zoning property adjacent to large airports without being exposed to the complexities and multiplicities of the problems and the conditions from which they arise.

It is true that several generalities of this nature found their way into the findings of fact of the instant case. Perhaps they should not have been included; but there is nothing to indicate that they influenced the trial judge "in rendering his decision," in accordance with the law applicable.

■ *Third:* Throughout the record, the trial judge was ever mindful of the rule announced in *Carlson v. Bellevue,*

73 Wn.2d 41, 47, 435 P.2d 957 (1968), wherein the court said that the initial reviewing court may not

> go outside the record in search of some supportive fact contended for but not revealed or embraced within the documents or records upon which its attention must be primarily focused and to which its attention should be limited. To permit such extraneous postlegislative fact finding to become the determinative fact in proceedings such as this would be to virtually invite the trial court to assert and superimpose its own observations and judgment upon those of the legislative tribunal and to foreclose any meaningful subsequent review of the trial court's determination.

The record discloses that the trial judge had another theory, not one that would in anywise modify the rule of law under which he must eventually make his decision as we have just set forth, but one that is a real compliment and an addition to our everchanging judicial system.

King County and Mr. Colella were represented by most competent counsel, both of whom at times strayed beyond the strict rule of law to which the trial judge was holding himself.

In addition to the intervenors who represented themselves (not under oath), two residents of the neighborhood also addressed the court. In response to the question, "Would you like to be taken out by the Port?" one replied, "Certainly." The other stated, "It's just an undesirable neighborhood now."

During 3½ years, it is apparent that King County, intervenors and the neighborhood were fighting a delaying and holding action hoping that someone would produce a solution, preferably the Port of Seattle. It was this solution that the trial judge was seeking. The attitude of the trial judge is best expressed in his own words:

> [E]ver since this matter was presented to *this* Court in the first instance, the Court has made every attempt possible to reach an amicable solution and settlement of this cause, . . . has made every reasonable attempt with all parties involved to effect the [sic] workable solution.
> . . .

Certain additional testimony was taken during the course of this trial, over and beyond the record of the proceedings before the Hearing Examiner and the County Council, *for the sole purpose of attempting, on the part of the Court, to effectuate an amicable settlement.*

. . .

The Court, at this point, recognizes the Court must confine itself to the record, *which I have done.*
(Italics ours.)

It was not error for the trial court in the instant case to try to promote an amicable settlement.

The remainder of appellant's assignments of error pertain to the second question: Was the action of the King County Council in refusing to rezone the Colella properties from SR (suburban residential) to ML (light manufacturing) arbitrary, capricious, and unreasonable?

■ The judicial decisions discussing, defining, and applying the rules of law appertaining to arbitrary, capricious, and unreasonable actions are legion. It is not our function nor desire to expand or detract from the rules already so well stated in *Anderson v. Island County*, 81 Wn.2d 312, 317, 501 P.2d 594 (1972), in which the court said:

The nature of our standard of review in zoning cases was well-stated in *State ex rel. Myhre v. Spokane*, 70 Wn.2d 207, 210, 422 P.2d 790 (1967):

Zoning is a discretionary exercise of police power by a legislative authority. *Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955). Courts will not review, except for manifest abuse, the exercise of legislative discretion. *State ex rel. Smilanich v. McCollum*, 62 Wn.2d 602, 384 P.2d 358 (1963). Manifest abuse of discretion involves arbitrary and capricious conduct. Such conduct is defined to be without consideration and in disregard of the facts. *State ex rel. Lopez-Pacheco v. Jones*, 66 Wn.2d 199, 401 P.2d 841 (1965); *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno*, 61 Wn.2d 461, 378 P.2d 691 (1963). One who asserts that a public authority has abused its discretion and is guilty of arbitrary, capricious, and unreasoning conduct has the burden of proof. *State ex rel. Lopez-Pacheco v. Jones, supra; State v. ex rel. Longview Fire Fighters Union,*

*Local 828, v. Longview*, 65 Wn.2d 568, 399 P.2d 1 (1965). If the validity of the legislative authority's classification for zoning purpose is fairly debatable, it will be sustained. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 71 L.Ed. 303, 47 Sup. Ct. 114, 54 A.L.R. 1016 (1926).

The task before this court then is to determine whether reasonable minds could differ in finding a substantial relation between the zoning action of the board of commissioners and the public health, safety, morals or general welfare. *McNaughton v. Boeing*, 68 Wn.2d 659, 414 P.2d 778 (1966); 8A E. McQuillin, *Municipal Corporations* § 25.279 (3d ed. 1965). "Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." *Lillions v. Gibbs*, 47 Wn.2d 629, 289 P.2d 203 (1955) at 633.

The trial judge recognized that the crux of the problem was the application of the rules to the specific facts of the instant case.

It is undisputed that Mr. Colella's property adjoins a busy, limited-access freeway on one side and a busy and noisy national and international airport on another side; that having been classified as being in zone 3, the highest classification of airport noise, it is no longer in a desirable residential neighborhood; that residents of the surrounding neighborhood are marking time and just hoping and waiting for the Port of Seattle to purchase their property so they can get out of there; that F.H.A. will no longer guarantee mortgages for new construction upon Mr. Colella's property or upon any property in zone 3; that the property, in all probability, will never be used as residential property.

If the judiciary is to serve its purpose, it must be both academic and practical. The trial judge satisfied both aspects of this requirement when he concluded that the decision of the examiner and the county council on the facts of this case was not only arbitrary and capricious and unrealistic but also "not even in good common sense."

The basis of the trial court's decision was best summarized by the court itself when it said, "In short, the subject property has lost its residential character." Under the facts of this case, such a basis is upon strong footing in this jurisdiction. In *Bishop v. Houghton*, 69 Wn.2d 786, 792, 420 P.2d 368 (1966), the Supreme Court held:

> [O]utmoded zoning regulations can become unreasonable, and the zoning authorities' failure to suitably amend or modify their ordinances can become arbitrary, in which event courts can and should grant appropriate relief. 2 Metzenbaum, Zoning 1125 (2d ed. 1955).

Affirmed.

JAMES, J., concurs.

FARRIS, J. (dissenting)—A superior court "acts in an appellate capacity" when it reviews a hearing held by zoning authorities to determine whether rezoning is necessary, *Sonneland v. Spokane*, 4 Wn. App. 865, 868, 484 P.2d 421 (1971), and it

> must limit its inquiry to a determination of whether the . . . "conclusions may be said to be, *as a matter of law*, arbitrary, capricious or contrary to law." *Reiger v. Seattle*, 57 Wn.2d 651, 653, 359 P.2d 151 (1961); *Helland v. King County Civil Serv. Comm'n*, 84 Wn.2d 858, 529 P.2d 1058 (1975).

*Lewis v. Medina*, 13 Wn. App. 501, 504, 535 P.2d 150 (1975). Further, where, as here,

> zoning authorities have in fact, . . . held hearings and considered changed conditions in relation to their zoning ordinances and made a legislative determination that rezoning is either necessary or unnecessary

the court may only consider evidence presented at the hearing. *Bishop v. Houghton*, 69 Wn.2d 786, 793, 420 P.2d 368 (1966); *Sonneland v. Spokane, supra.*

We have recently reviewed the standard for determining whether an administrative decision is arbitrary, capricious or contrary to law. In *Lewis v. Medina, supra* at 504, we held:

A finding
can be held to be "arbitrary or capricious" if there is no support for it in the record and it is therefore a "willful and unreasoning action, in disregard of facts and circumstances." *Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n,* 69 Wn.2d 472, 479, 418 P.2d 735 (1966).
*Stempel v. Department of Water Resources,* 82 Wn.2d 109, 114, 508 P.2d 166 (1973).
A conclusion is contrary to law when the application of valid factual findings results in a holding inconsistent with a proper construction of the governing law.

The decision will be upheld even if, within the record, "there is room for two opinions," *Bishop v. Houghton, supra* at 794. *Farrell v. Seattle,* 75 Wn.2d 540, 452 P.2d 965 (1969); *McNaughton v. Boeing,* 68 Wn.2d 659, 414 P.2d 778 (1966); *State ex rel. Morrison v. Seattle,* 6 Wn. App. 181, 492 P.2d 1078 (1971).

A review of the proceedings before the King County Council reveals that consideration was given to a number of factors which must be balanced in land use regulation. The council concluded that the rezoning problems occasioned by the recent growth of the Seattle-Tacoma Airport and its effect on surrounding lands are not best resolved through case by case rezoning and determined that an "area zoning study" leading to a comprehensive zoning plan would be the wisest remedial method. In addition, the council determined that a rezone of the Colella property would be "detrimental to adjacent residences."

Those conclusions are supported by the record. The fact that a contrary opinion can be drawn from the same record is of no moment on appeal. The council did not act arbitrar-

ily, capriciously or contrary to law. With that holding, appellate review is completed.[1]

I would reverse.

Petition for rehearing denied February 18, 1976.

Review denied by Supreme Court April 23, 1976.

---

[1]None of the parties have contended that property surrounding the airport is suitable for residential purposes. Rather, the parties differ in their views as to the timing and scope of the problem's remedy. I would uphold the county's conclusion that case by case rezoning is not a viable solution and that a remedy is best fashioned following a study and as part of a comprehensive plan. The record suggests that King County will act expeditiously and in good faith in solving this problem but its failure to do so would justify a further legal action.