[No. 26081-0-III.   Division Three.   June 19, 2008.]

JOE HUMBERT ET AL., *Appellants*, v. WALLA WALLA COUNTY, *Respondent*.

*Michael E. de Grasse*, for appellants.

*James L. Nagle, Prosecuting Attorney*, and *Jesse D. Nolte, Deputy*, for respondent.

¶1 KORSMO, J. — The appellants, Joe Humbert and Birch Creek Construction, sought a conditional use permit from Walla Walla County to open and operate a rock quarry in a farm field near Highway 12. They agreed to various conditions proposed by the Department of Transportation (DOT) concerning the nearby intersection with the highway. The hearing examiner granted the permit conditioned on several requirements, including the agreed upon intersection improvements. Appellants then appealed, seeking to overturn the agreed upon conditions and a restriction on the size of the development. The superior court affirmed the hearing examiner. So do we.

## FACTS

¶2 Appellants leased nearly 222 acres of a wheat field northeast of the City of Walla Walla near the intersection of U.S. Highway 12 and Sapolil Road with the intent to

operate a quarry to supply crushed rock for building projects. The primary season for the operation would be March to September, with the quarry expected to shut down completely during December and January. Between 90 and 95 percent of the truck traffic from the quarry would go to and from the City of Walla Walla. The truck traffic would be involved in making right turns onto Highway 12 to head to the city with loaded trucks, and would make left turns from the highway to Sapolil Road when returning to the quarry.

¶3 A public hearing on the permit application was held June 12, 2006. Brad Humbert, son of Joe Humbert, testified at the hearing concerning efforts made to mitigate noise and other nuisance features of the operation. He described how the site would be developed in 20-acre segments and produced an exhibit showing how three 20-acre segments in the center of the project would be the first portions developed. He referred to the segments as "Phase One," "Phase Two," and "Phase Three." The land would be reclaimed as each segment was completed. The younger Humbert testified: "I doubt I'll ever see Phase III in my lifetime, so it's probably way long down the road."

¶4 Two neighbors testified that the Highway 12 and Sapolil Road intersection was dangerous; it was hard to see oncoming highway traffic from Sapolil Road. County officials told the hearing examiner that they did not have jurisdiction over the highway and were surprised that DOT had not submitted comments regarding the intersection.[1] The hearing examiner decided to hold the record open 14 days in order to have DOT weigh in on sight distances and turning standards for the intersection. Counsel for the applicants objected to giving DOT more time.

¶5 DOT provided a letter on June 28, 2006, opining that the existing intersection did not meet required sight distances due to the slope of the land. It also suggested that other improvements be made to the intersection to accom-

---

[1] DOT had submitted a letter April 18, 2006, noting that the applicants would have to ensure their trucks met size and load limits, and also keep Highway 12 free from any of their debris.

modate the large trucks that would be using it. Appellants asked to have time to respond to DOT. The request led to a meeting between Brad Humbert and a DOT engineer at the intersection. DOT subsequently produced a letter for the hearing examiner on July 18. The letter noted that the sight distances at the intersection were not desirable but did meet minimum requirements. DOT also indicated that it had agreed with Brad Humbert that once the quarry operation reached a workload of 20 trucks per day, Humbert would make several improvements to the intersection: the existing vertical slopes would be removed, a left turn lane would be created for traffic coming from Walla Walla, the right turn radius for westbound traffic would be improved, and a westbound acceleration ramp would be constructed for the loaded trucks headed toward Walla Walla. Three days later Joe Humbert submitted a letter to the hearing examiner indicating that he, too, agreed to those terms.

¶6 Two weeks later the hearing examiner granted the conditional use permit subject to 42 different requirements. The requirements at issue here are Condition 23 and Condition 29. Condition 23 required appellants to make intersection improvements per the agreement with DOT. Condition 29 limited the permit to the three described segments and indicated that future expansion would be subject to a new conditional use application process.

¶7 The applicants filed a motion for reconsideration, which was denied. They then filed a land use petition with the Walla Walla Superior Court. The court denied the petition and affirmed the hearing examiner. The court also entered its own findings of fact and conclusions of law. The applicants then appealed to this court.

ANALYSIS

*Hearing Length*

¶8 Applicants first contend that the hearing examiner erred in holding the record open for DOT to submit information concerning the intersection. In particular, they

contend that the hearing examiner could not request a second comment from DOT. The statute does not limit the examiner's authority in such a manner.

¶9 The hearing examiner conducted an open public hearing.[2] RCW 36.70B.020(3). In such cases, "A local government may accept public comments at any time prior to the closing of the record of an open record predecision hearing." RCW 36.70B.110(2)(e) (partial). Here, the hearing examiner kept the record open for two weeks to seek input from DOT concerning the hazardous intersection described by the neighbors.

¶10 The appellants objected at the hearing on the basis that the examiner lacked the authority to keep the record open where DOT had not previously addressed the issue. They frame the issue before this court as whether the examiner could allow DOT a second opportunity. In their view this action was an unlawful procedure entitling them to relief under RCW 36.70C.130(1)(a). Appellants have not, however, directed us to any authority that prohibits a hearing examiner from keeping a record open for a reasonable time to solicit additional testimony or that prohibits one party from addressing the examiner more than one time or on more than one subject. In short, there simply is no showing that requesting DOT to submit information on an issue it had not previously addressed was unlawful.

¶11 Safety concerns were raised by neighbors at the hearing. The agency with jurisdiction over the intersection had not previously addressed those concerns. It was understandable that the examiner, who gave this application a thoughtful and thorough review, would seek to take advantage of the expertise of DOT. There was no error.

---

[2] The Walla Walla County Code (WWCC) requires public hearings on conditional use permits. WWCC 14.09.050(B)(2).

## Condition 23

¶12 Appellants next[3] contend that the hearing examiner erred in imposing the intersection improvement requirements listed in Condition 23. Since appellants affirmatively agreed to those improvements with DOT, a nonparty to this action, and conveyed that information to the hearing examiner, they cannot be heard to claim error when the examiner adopted those conditions. The challenge is precluded by the invited error doctrine.

¶13 "The invited error doctrine prohibits a party from setting up an error in the trial court then complaining of it on appeal." *In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 94, 66 P.3d 606, *cert. denied,* 540 U.S. 875 (2003). As was explained once in a criminal case, the invited error doctrine is constitutional because "He is not denied due process *by the state* when such denial results from his own act, nor may the state be required to protect him from himself." *State v. Lewis,* 15 Wn. App. 172, 177, 548 P.2d 587, *review denied,* 87 Wn.2d 1005 (1976). The invited error doctrine has been applied to administrative actions just as it has trial court proceedings. *E.g., Colella v. King County,* 14 Wn. App. 247, 252, 539 P.2d 693 (1975), *review denied,* 87 Wn.2d 1001 (1976).

¶14 Similarly here, the appellants cannot claim they were deprived of property or otherwise not accorded due process of law when they agreed on the intersection improvements with DOT and affirmatively told the hearing examiner that they agreed with the conditions. Neither the hearing examiner nor respondent Walla Walla County sought the agreement or denied the applicants their due

---

[3] Appellants also contend that the superior court erred in entering findings of fact and conclusions of law from its review of the hearing examiner's decision. Respondent agrees. The superior court need not have entered findings and conclusions since it is reviewing the findings made by the hearing examiner to see if there is error as a matter of law. RCW 36.70C.130. Neither party assigns error to any of the findings or conclusions, nor do they otherwise argue the point. This court will disregard the superior court's findings and not further address the issue. *Van Sant v. City of Everett,* 69 Wn. App. 641, 651, 849 P.2d 1276 (1993).

process rights. Appellants cannot challenge the hearing examiner's decision to go along with conditions that appellants approved.

¶15 Even if the invited error doctrine were not applicable to this case, the challenge to the requirements of Condition 23 would fail. RCW 82.02.020 prohibits local governments from imposing various taxes. It also limits impact fees that can be imposed on development but does permit local governments to enter into voluntary agreements to mitigate the impact resulting directly from development. However,

> No county, city, town, or other municipal corporation shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation cannot establish is reasonably necessary as a direct result of the proposed development or plat.

RCW 82.02.020(3) (partial).

¶16 This provision is telling in two ways. First, the statutory limitation on voluntary agreements by its terms speaks only to the local political subdivisions of the state. It does not prohibit the state government or its agencies from entering into voluntary agreements concerning land development. Here, the voluntary agreement was between a state agency and the developers. Walla Walla County was not a party to it. The statute does not limit the ability of the State of Washington to enter into agreements with developers. It also does not limit the authority of local governments to accept voluntary agreements that the state government enters into with developers.

¶17 This fact pattern is substantially different from the more common situation where the permit-granting authority is the same one that is negotiating a "voluntary" agreement. *E.g.*, *Cobb v. Snohomish County*, 64 Wn. App. 451, 829 P.2d 169 (1991), *review denied*, 119 Wn.2d 1012 (1992). The unequal balance of power in such situations explains why the legislation would limit the authority to enter into agreements. Absent some indication that DOT

was acting as a surrogate for Walla Walla County, we do not see why this voluntary agreement would run afoul of the statute.

¶18 Second, the provision does permit voluntary agreements to mitigate the direct impacts of a development project. The record would support the improvements required by Condition 23. The neighbors testified to the dangerous nature of the intersection due to the limited visibility distance. The DOT noted the intersection was not able to accommodate right turns from large trucks. All the testimony acknowledged that a substantial number of trucks would eventually be using the intersection every day. They would slow traffic when they needed to turn on or off of Highway 12. Given the marginal sight lines, there was understandable concern about the impact of a large trucking operation on a small rural intersection. Three of the remedies—addition of an acceleration lane and a left turn lane, along with an improved right turn lane— were directly related to the impact of the development on the intersection.

¶19 The one provision that might not have been justified by the testimony was the requirement to reduce the slopes in order to improve visibility. The visibility problem preexisted the application for the use permit. However, the testimony would have justified the examiner in concluding that the project would overtax the capacity of the intersection due to the combination of large, slow-moving trucks and limited visibility. The stipulation to the changes made it unnecessary for the examiner to draw any conclusions about the propriety of that particular modification. We cannot fault the examiner for not further addressing a condition that everyone approved—nor will we let a party claim insufficiency in the record where the party directly contributed to the issue by making further analysis unnecessary.

¶20 The hearing examiner could rightfully conclude that heavy use of a marginal rural intersection by large, slow-moving trucks would create traffic hazards that needed to

be mitigated. The conditions were directly related to the problems created by the new project. The examiner did not err by imposing them.

*Condition 29*

¶21 Appellants also contend that the examiner erred in limiting the permit to the first three phases of the planned development. As appellants agreed at oral argument, the examiner was not required to either totally approve or totally deny the application. The limitation to the three phases was consistent with the applicants' plan for managing environmental and nuisance concerns. The examiner did not err.

¶22 The hearing examiner was entitled to approve or deny the application, or to set conditions on the application. Walla Walla County Code (WWCC) 2.50.070(C). She chose the latter course of action. Applicants claim that the decision was both without factual basis in the record and was a clearly erroneous application of the law to the facts. RCW 36.70C.130(1)(c), (d). We disagree.

¶23 There was a factual basis for the finding. Various environmental questions were presented by the proposal. Operating a rock quarry necessarily involves the use of equipment that results in noise, vibrations, dust, and flying rocks. The applicants' primary method of dealing with these environmental concerns was that they would be starting work in the center of the land and be the farthest away from the neighbors and roads. In essence, the applicants never suggested any plan to mitigate the nuisance aspects of their operation when it expanded beyond the center of the land. Since the applicants addressed only that aspect of the project, it was understandable that the hearing examiner found only that portion of the project satisfied the environmental concerns. There was substantial evidence supporting the finding. RCW 36.70C.130(1)(c).

¶24 For similar reasons, the decision to limit the permit to the first three phases of the project was reasonable. It was the applicants' obligation to establish that the project

would "not generate significant nuisance conditions such as noise, dust, glare, vibration." WWCC 17.40.020(A)(1). They attempted to meet only that obligation with respect to the first three phases of the project. Understandably, the hearing examiner limited the permit to those parts of the project that met the county code requirements. The decision was not clearly erroneous. RCW 36.70C.130(1)(d). Condition 29 is proper.

¶25 Respondent Walla Walla County has requested attorney fees. Since respondent has prevailed at both levels of appeal, it is entitled to attorney fees pursuant to RCW 4.84.370. The decisions below are affirmed and the matter is remanded for an award of attorney fees.

SWEENEY and BROWN, JJ., concur.

Reconsideration denied August 5, 2008.